**Affirmed and Opinion filed March 18, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00368-CV

---

## BOWEN ZHU AND JAIN YU, Appellants

### V.

## KAI C. LAM AND THE HOUSESOLD REALTY, INC., Appellees

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 997726**

---

## O P I N I O N

After discovering that the home they purchased was more than 700 square feet smaller than represented, appellants Bowen Zhu and Jain Yu sued their real-estate agent and the agent's employer for violations of the Deceptive Trade Practices-Consumer Protection Act ("the DTPA"), negligent misrepresentation, and breach of fiduciary duty. The trial court granted no-evidence summary judgment against the buyers, who now appeal the judgment and the trial court's

evidentiary rulings striking some of their summary-judgment evidence. We affirm.

## I. Factual and Procedural Background

Appellants Bowen Zhu and Jian Yu ("the Buyers") contracted to buy a house in Harris County, Texas for $180,000. Their real estate agent was Kai C. Lam, acting as an agent or employee of The Housesold Realty, Inc. The seller, the listing agent, Harris County Appraisal District, and Lam all represented that the house's living area was 2,722 square feet. When the Buyers initially viewed the house, Zhu stated that the house seemed smaller than 2,722 square feet and smaller than the Buyers' previous residence, which was a two-story home of approximately 2,600 square feet. Lam again stated that the new house was 2,722 square feet, and that it seemed smaller because it had an open floor plan.

The day before the sale was to close, Zhu told Lam he "wanted to back out of the deal and not buy the house." According to Zhu, Lam "told me that I could not back out of the deal because I was under contract and I would get sued if I changed my mind." Lam gave Zhu a one-percent rebate and persuaded the seller to give Zhu a $250 discount for completing the purchase. When the Buyers moved in, they discovered that their furniture would not fit. At Zhu's request, the Harris County Appraisal District re-measured the house and found that its total living area was only 1,967 square feet—a difference of 755 square feet.

The Buyers sued Lam and Housesold Realty for DTPA violations, negligent misrepresentation, and breach of fiduciary duty.[1] Lam moved for no-evidence summary judgment on each of the Buyers' causes of action. In their summary-judgment response, the Buyers included as evidence (a) Zhu's affidavit, (b) Lam's

---

[1] Because all of the Buyers' claims against Housesold Realty are based on Lam's actions as Housesold's agent or employee, we refer to Lam as if he were the sole defendant. The Buyers initially sued the seller, the seller's agent, and the seller's agent's employer as well, but later nonsuited those claims.

deposition transcript with its attached exhibits, (c) a copy of a print-out from the Harris County Appraisal District's website, and (d) an email from Lam to a nonparty real estate agent in which Lam argues that a house listed by the other agent is overpriced when compared with the house at issue here. Lam objected to the portions of Zhu's affidavit in which he expressed any opinions "about the value of real property, real estate appraisal, or residential market values, either presently or at the time of the transaction made the basis of this suit." Specifically, Lam argued that in offering such opinions, Zhu made conclusory statements without supporting facts or explanation. Lam also objected that the copy of the print-out from the Appraisal District's website was hearsay and was unaccompanied by a business-record affidavit.

The trial court sustained Lam's objections to the Buyers' summary-judgment evidence and granted summary judgment in Lam's favor on all of the Buyers' causes of actions. In a motion for new trial, the Buyers challenged the trial court's evidentiary rulings, arguing for the first time that their copy of the print-out from the Appraisal District's website was a public record under Texas Rule of Evidence 803(8). The motion for new trial was overruled by operation of law.

## II. ISSUES PRESENTED

In their first issue, the Buyers contend that the trial court erred in granting summary judgment because they raised a genuine issue of material fact as to each of the challenged elements of their causes of action. In their second issue, they assert that the trial court abused its discretion in sustaining Lam's objections to Zhu's affidavit testimony about the property's value. They argue in their third issue that the copy of the print-out from the Appraisal District's website is a public record, and thus, the trial court abused its discretion in excluding it.

3

### III. THE BUYERS' CHALLENGES TO THE SUMMARY JUDGMENT

We review the trial court's grant of a summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks*, 206 S.W.3d at 582. We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164

4

S.W.3d 656, 661 (Tex. 2005). The evidence is insufficient to raise a genuine issue of material fact if "it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

## A. There is no evidence of damages to support the Buyers' claims for DTPA violations and negligent misrepresentation.

As one ground for summary judgment, Lam asserted that there was no evidence to support the damage element of the Buyers' claims for DTPA violations and negligent misrepresentation. Because the summary-judgment evidence does not raise a fact question on the issue of damages, we need not address Lam's other asserted bases for summary judgment as to these claims.

Although the measure of damages in these claims are not identical, they share common elements of proof. If the Buyers were to succeed in their DTPA claims, they would be entitled to recover the greater of out-of-pocket damages or benefit-of-the-bargain damages. *See W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988). Out-of-pocket damages are measured by the "difference between the value of that which was parted with and the value of that which was received," and benefit-of-the-bargain damages are measured by "the difference between the value as represented and the value actually received." *Id.* Both measures require proof of the value of the goods or services as actually received. Here, that would be the fair market value of the house on the date of sale, given its actual square footage. If the Buyers prevailed in their negligent-misrepresentation claim, they would be entitled to recover damages measured by their "pecuniary loss." Proof of pecuniary loss requires evidence of the value of what was actually received in the transaction, and may also include evidence of consequential damages. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d

5

662, 663–64 (Tex. 1998) (per curiam) (defining "pecuniary loss" as "the difference between the value of what he has received in the transaction and its purchase price or other value given for it," together with loss sustained "as a consequence of the plaintiff's reliance upon the misrepresentation").

The trial court struck the only damage evidence cited by the Buyers concerning the house's true fair market value as of the date of sale.[2] On appeal, the Buyers assert that "[d]amages are effectively presumed in this case," but they cite no authority that such a presumption exists. Moreover, they did not raise this argument in their summary-judgment response.

We accordingly hold that the trial court did not err in granting summary judgment as to the Buyers' DTPA and negligent-misrepresentation claims.

## B. There is no evidence that Lam breached a fiduciary duty to the Buyers.

To prevail in a breach-of-fiduciary-duty claim, a plaintiff must prove that (1) there is a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached his fiduciary duty to the plaintiff, and (3) the breach resulted in an injury to the plaintiff or benefit to the defendant. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In their pleadings, the Buyers alleged that Lam breached his fiduciary duty to them by failing to disclose or discover the actual square footage of the home.[3] Among the other grounds he raised for summary judgment, Lam asserted that there was no evidence of a breach. More particularly, he asserted that there was no evidence that he knew

---

[2] For the reasons discussed in section IV, we conclude that the trial court did not abuse its discretion in doing so.

[3] They additionally stated in their pleadings that Lam breached a fiduciary duty to them by advertising the home as having 2,722 square feet. On appeal, they do not reurge this assertion, which in any event is subsumed in the allegation raised in their summary-judgment response that Lam represented that the house's area was 2,722 square feet.

6

the actual square footage or that he was required to measure or otherwise investigate the size of the home's living area.

In their summary-judgment response, the Buyers identified no evidence that Lam actually knew the square footage, and they cited neither evidence nor authority that he was required to measure or investigate the square footage of the house. *Cf. Hagans v. Woodruff*, 830 S.W.2d 732, 736 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding that "a broker has no legal duty to inspect listed property and disclose all facts which might materially affect its value or desirability"). They instead asserted that Lam breached his fiduciary duty by representing that (1) the house was 2,722 square feet; (2) the house was bigger than their previous home; (3) the house only seemed smaller than their previous home because it had a different floor plan; and (4) they would be sued by the seller if they backed out of the deal, even though "at most Mr. Zhu would have just lost his earnest money." Although these allegations had not previously been raised as a basis for the Buyers' breach-of-fiduciary-duty claim, Lam did not object when the Buyers relied on them in their summary-judgment response. The Buyers' breach-of-fiduciary-duty claim based on these new allegations therefore was tried by consent. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam).

The Buyers produced evidence that Lam told them the house was 2,722 square feet; that it was bigger than their previous home; and that it only seemed smaller because of its layout. The Buyers cited no evidence, however, that Lam knew or should have known otherwise. They instead relied on Zhu's affidavit, in which he attested that the house "was listed by the seller and by [the seller's real estate agent and listing agent] as having 2,722 square feet." Given the absence of evidence or authority that Lam knew or should have known otherwise, Lam did not

7

breach his fiduciary duty by making the same representations to the Buyers that had been made by the seller and by the listing agent.

The Buyers' final allegation—that Lam represented that the seller would sue them if they backed out of the contract even though they actually would have faced no consequence more severe than the loss of their earnest money—is unsupported by the evidence.  Specifically, the Buyers produced no evidence that if they failed to complete the purchase, the seller could not or would not have sued them, or that Zhu would only have lost his earnest money.  They instead rely on an excerpt from Lam's deposition in which the following exchange occurred:

> Q:     Just out of curiosity, what's been your experience?  People that do back out of deals like this, they just lose their earnest money, or what happens?
>
> A:     95 percent of the times are like that.
>
> Q:     Sir?
>
> A:     95 percent of the times are like that.
>
> Q:     Oh, like that.
>
> A:     And other than that, some of — they — of course, the seller still have some other remedy according to the contract.  But I don't see them often do that.
>
> Q:     Okay.  It's very, very rare that they ever sue somebody to enforce the contract; huh?  Has that been your experience?
>
> A:     Yes.  That's my experience.

This is not evidence that *this* seller could not or would not sue *these* Buyers if they breached the contract.  Moreover, as part of their summary-judgment evidence, the Buyers produced the sales contract as an attachment to Lam's deposition, and as Lam pointed out in his reply, the contract *did* permit the seller to sue if the Buyers did not comply with the contract.  Specifically, the contract provides that "[i]f Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law,

or both . . . ."

We overrule the Buyers' first issue.

## IV. THE BUYERS' CHALLENGES TO THE EVIDENTIARY RULINGS

When reviewing a trial court's decision to exclude evidence, we apply an abuse-of-discretion standard. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (sub. op.); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). We will uphold the evidentiary ruling if there is any legitimate basis to do so, regardless of whether that basis was asserted in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). We will reverse an erroneous evidentiary ruling only if it probably caused the rendition of an improper judgment. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).

**A.  The trial court did not abuse its discretion in striking portions of Zhu's affidavit.**

In the Buyers' second issue, they contend that the trial court erred in sustaining Lam's objection that Zhu's affidavit testimony concerning the house's fair market value was conclusory. The entirety of that testimony is as follows:

> I am familiar with the market value of the property that I own. It is my opinion that the market value in June of 2010 was $140,000.00. In addition, [the Harris County Appraisal District] now lists the appraised value of our home as $155,000, which is much less than the $174,402 it listed in 2010 and the $180,000 we paid for the home.

We hold that the trial court did not abuse its discretion in sustaining the objection to this testimony.

9

A property owner is considered qualified to testify to his property's value. *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155–56 (Tex. 2012). But just because a witness is qualified to offer an opinion does not mean that the opinion has any probative force. *Id*. at 156–57; *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). As the Texas Supreme Court has repeatedly stated, "a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Justiss,* 397 S.W.3d at 156 (quoting *Coastal Transp. Co.*, 136 S.W.3d at 232); *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). As the Buyers acknowledge, the property owner still must provide the factual basis on which his opinion rests. *Justiss*, 397 S.W.3d at 159. His opinion of the property's value "must be substantiated; a naked assertion of 'market value' is not enough." *Id.* at 156. The witness's "testimony is conclusory as a matter of law if he 'simply state[s] a conclusion without any explanation.'" *Id.* at 156 (quoting *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008)) (alteration in original).

Here, Zhu's testimony consists of just such an unexplained conclusion. The Buyers acknowledge that Zhu did not "specifically enumerate[] the factual basis for his opinion as to the market value," but they point out that he "did testify that he had visited other houses that were for sale [and] had recently sold his previous home." Zhu testified that the Buyers visited "several houses," but he stated only that *one* of the houses was in the same neighborhood as the house they purchased, and that his former residence was in a different city. Even assuming, without deciding, that these facts nevertheless would support an inference that Zhu was familiar with market values in the area in 2010, that familiarity does not explain how he determined that the true fair market value of the house was $140,000 at the time of purchase. *See id.* at 161 (holding witness's testimony legally insufficient

10

because "[a]lthough he demonstrated his familiarity with area market values, he failed to explain the factual basis behind his determination" of his property's decrease in value).

Finally, the Buyers point to Zhu's affidavit testimony that as of July 13, 2012, the Harris County Appraisal District "list[ed] the appraised value of our home as $155,000, which is much less than the $174,402 it listed in 2010 and the $180,000 we paid for the home." Zhu's testimony that the property's appraised value in 2012 was lower than its appraised value in 2010 does not explain how he determined that the property's true fair market value in 2010 was $140,000.[4]

We overrule the Buyers' second issue.

**B.    The trial court did not abuse its discretion in sustaining Lam's hearsay objection to a copy of a print-out of a record from the Harris County Appraisal District's website.**

In their motion for new trial and on appeal, the Buyers argued that the trial court erred in sustaining Lam's hearsay objection to a copy of a print-out of a record from the Harris County Appraisal District's website because this document falls within the public-record exception to the hearsay rule. We disagree.

The rule setting forth the exception provides in pertinent part as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(8)    Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:

---

[4] The record does not even support an inference that the decrease in the property's appraised value was the result of a correction in the property's size. The summary-judgment evidence that was admitted without objection shows no decrease in the property's appraised value in 2011—even *after* the Appraisal District corrected the representation of the property's size.

11

(A)　the activities of the office or agency;

(B)　matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or

(C)　in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;

unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX. R. EVID. 803(8).  But the Buyers' reliance on this Rule suffers from both a procedural and a substantive problem.

As a procedural matter, "[t]he proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence."  *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004) (citing *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 301 (Tex. 1962)); *Ortega v. Cach, LLC*, 396 S.W.3d 622, 629 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Although Lam's hearsay objection was filed more than six months before the summary-judgment hearing, the record does not show that the Buyers responded to the objection at any time before judgment was rendered.  The Buyers raised the public-records exception of Texas Rule of Evidence 803(8) for the first time in their motion for new trial, and on appeal, the Buyers do not challenge the overruling of that motion.  Given their failure to assert any basis for admitting the document until after judgment was rendered, we cannot say that the trial court abused its discretion in sustaining the objection.

The substantive problem with the Buyers' argument is found in the last part of the Rule:  public records fall within an exception to the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness."

12

TEX. R. EVID. 803(8).  Here, the Buyers offered summary-judgment evidence that included copies of two print-outs of information concerning the same property and obtained from the same website, but the two documents contradict one another. The copy of a print-out attached to Lam's deposition and admitted without objection apparently was obtained on May 17, 2011.  At that time, the Harris County Appraisal District represented that the subject property's total living area was 1,967 square feet, and it valued the property on January 1, 2010 *and* on January 1, 2011 at $174,402, despite the intervening correction in the statement of the house's size.[5]  The excluded document is a copy of a print-out that appears to have been obtained on July 10, 2012.  Like the first document, it lists the property's total living area as 1,967 square feet and its appraised value for 2010 at $174,402, but it lists the appraised value for both 2011 and 2012 as $155,000. Thus, the same website listed the appraised value of the property in 2011—*after* correcting the square footage—as both $155,000 and $174,000.  The Buyers did not establish any reason for this discrepancy between the print-outs.  Even if the Buyers had timely asserted that the second print-out was a public record, the trial court would not have abused its discretion in determining that the excluded information was not trustworthy, and therefore did not qualify for admission under Rule 803(8).  For this additional reason, we overrule the Buyers' third issue.

---

[5] The Appraisal District  corrected the measurements in July 2010.

## V. CONCLUSION

Having overruled each of the issues presented, we affirm the trial court's judgment.


/s/    Tracy Christopher
           Justice


Panel consists of Justices Boyce, Christopher, and Brown.

14