**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed August 19, 2015.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-00050-CV

### TEXPRO CONSTRUCTION GROUP, LLC, Appellant
### V.
### SYLVESTER DAVIS, Appellee

### On Appeal from the 134th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-13-05010

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Brown

After the trial court granted appellee Sylvester Davis an interlocutory default judgment on liability in his suit against appellant TexPro Construction Group, LLC, TexPro filed an answer. The court subsequently entered a final judgment awarding unliquidated damages to Davis. In this restricted appeal, TexPro raises four issues in which it contends the trial court erred in granting the default judgment. For the following reasons, we affirm in part and reverse and remand in part.

### BACKGROUND

On May 6, 2013, Davis sued TexPro. An affidavit of service reflects that TexPro's registered agent was personally served on May 29, 2013. In his petition, Davis alleged he contracted with TexPro for a construction project in his backyard. The contract provided that TexPro would provide all labor and materials for $114,350. Davis paid for TexPro's services,

but TexPro did not complete the work as promised and instead demanded more money midway through the project to complete the job. To the extent TexPro did perform services, its work was conducted negligently. Davis alleged he had to hire another contractor to complete the project. Davis asserted several claims, including violations of the Texas Deceptive Trade Practices Act (DTPA), fraud, and breach of contract.

As of July 2, 2013, TexPro had not answered. Davis moved for a partial default judgment on liability and requested a hearing to determine the amount of his unliquidated damages. On July 8, 2013, the trial court signed an interlocutory default judgment on liability. Four days later, on July 12, 2013, TexPro answered with a general denial. A damages prove-up hearing set for late July was cancelled. In August, Davis's counsel filed an Amended Notice of Hearing, which stated that Davis's damages prove-up hearing had been rescheduled for September 16, 2013.

On September 9, 2013, Davis filed a motion asking the court to grant him damages and enter a final judgment. In the motion, he asserted his actual damages for his DTPA claim were $117,230.50. He also alleged that $117,230.50 was the amount of his actual damages for his fraud claim and for his contract claim. Davis asked the court to award actual damages of $117,230.50, plus treble damages under the DTPA, attorney's fees, and/or exemplary damages of $350,000. Attached to the motion were the affidavits of Davis and his attorney, as well as copies of the contract and cancelled checks from Davis to TexPro.

On September 16, 2013, the trial court signed a final judgment awarding Davis damages. The judgment stated the court considered Davis's motion and his pleadings. The judgment awarded Davis a total of $117,230.50 in actual damages on his DTPA, breach of contract, and fraud claims. It also awarded $351,691.50 in treble damages under the DTPA, $350,000 in

–2–

exemplary damages on the fraud claim, and attorney's fees of $13,308.50. TexPro hired new counsel and, on January 8, 2014, filed a notice of restricted appeal.

## ELEMENTS OF A RESTRICTED APPEAL

When a party does not participate in person or through counsel in a hearing that results in a judgment, it may be eligible for a restricted appeal. *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (per curiam). To sustain a proper restricted appeal, the appellant must prove: (1) it filed notice of the restricted appeal within six months after the judgment was signed; (2) it was a party to the underlying lawsuit; (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or request for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Id.*; *see* TEX. R. APP. P. 26.1(c), 30.

TexPro was a party to the underlying lawsuit and filed its notice of restricted appeal within six months after the trial court signed the final judgment. In its appellate brief, TexPro asserts it did not attend any hearing. Davis has not filed an appellee's brief, and thus has not contradicted TexPro's lack of participation. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). There is no reporter's record in this case. The Texas Supreme Court has instructed that we are to liberally construe the non-participation requirement for restricted appeals in favor of the right to appeal. *Pike-Grant*, 447 S.W.3d at 886. We will do so in this case and conclude TexPro did not participate in any hearing that resulted in the judgment. TexPro also did not file any postjudgment motions or a request for findings of fact and conclusions of law. It filed nothing other than its untimely answer. We are left to consider whether there is error apparent on the face of the record.

## SERVICE OF CITATION

In its first issue, TexPro contends the record reflects that service was defective. TexPro's registered agent was Jeramie Eitel. Both the petition and citation listed an address for Eitel in Grapevine, Texas. The affidavit of service indicated Eitel was served at a different address, in Colleyville, Texas. TexPro maintains this discrepancy shows it was not properly served.

When the adequacy of service of citation is challenged in a restricted appeal, there are no presumptions in favor of valid issuance, service, or return of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). Strict compliance with the rules for service of citation must appear on the record. *Id.* There is no requirement, however, that when a defendant is personally served, it must be served at the address listed in the citation. *See* TEX. R. CIV. P. 106(a)(1). The process server was authorized to serve citation on TexPro wherever TexPro could be found. *See Westcliffe, Inc. v. Bear Creek Constr., Ltd.*, 105 S.W.3d 286, 291 (Tex. App.—Dallas 2003, no pet.) (citing *Garcia v. Gutierrez*, 697 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1985, no writ) ("where . . . the return affirmatively states that it was served on the named defendant, we hold, he may be served wherever he can be found in the county, and the person executing the citation is not limited to the address mentioned")). The case TexPro relies on for the proposition that there is no presumption it was amenable to service at an address other than its registered office is inapplicable because, in that case, the registered agent could not be found. *See BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 827 (Tex. App.—Eastland 2012, no pet.). We overrule TexPro's first issue.

## DEFAULT AFTER ANSWER

In its second issue, TexPro contends it was reversible error for the trial court to grant a no-answer default judgment after TexPro answered. If a defendant has not filed an answer at any time after he is required to do so, the plaintiff may take a default against him, provided that the

return of citation has been on file with the clerk for at least ten days. TEX. R. CIV. P. 107, 239; *see In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007), *pet. denied*, 260 S.W.3d 463 (Tex. 2008); *Thomas v. Gelber Grp., Inc.*, 905 S.W.2d 786, 788 (Tex. App.—Houston [14th Dist.] 1995, no pet.). A default judgment may not be granted when the defendant has an answer on file, even if the answer was filed late. TEX. R. CIV. P. 239; *see, e.g., Davis v. Jefferies*, 764 S.W.2d 559, 560 (Tex. 1989) (per curiam); *In re $475,001.16*, 96 S.W.3d 625, 627 (Tex. App.—Houston [1st Dist.] 2002, no pet.). TexPro relies on this general proposition to support its position.

As we understand TexPro's argument, it asserts that because the trial court's default judgment on liability was interlocutory when TexPro answered, the trial court erred in finalizing that interlocutory judgment. TexPro ignores the fact that it did not have an answer on file at the time the trial court granted a default judgment on liability. Here, there was an interlocutory no-answer default judgment on liability that became final when the court issued a post-answer default judgment on damages. TexPro is not entitled to have the no-answer default judgment on liability reversed simply because that judgment was not final until after TexPro answered. *See Wallen v. State*, 667 S.W.2d 621, 622–23 (Tex. App.—Austin 1984, no writ) (if trial court had jurisdiction to render interlocutory default judgment, it did not abuse its discretion in refusing to consider defendant's answer and evidence regarding merits at later hearing); *but see Balboa v. City of Nassau Bay*, No. 14-07-00259-CV, 2008 WL 442583, at *2 (Tex. App.—Houston [14th Dist.] Feb. 19, 2008, no pet.) (mem. op.).[1] TexPro has not shown error apparent on the face of the record in this regard. We overrule TexPro's second issue.

---

[1] In *Balboa*, the court of appeals determined that because an interlocutory default judgment on liability against a defendant became final after defendant answered, trial court improperly rendered a no-answer default judgment. 2008 WL 442583, at *2. The opinion does not contain much discussion of the issue. Further, it was a direct appeal, not a restricted appeal, in which the defendant filed a motion for new trial and participated in a hearing before the judgment became final. *Id.*, at *1–2.

In its fourth issue, TexPro maintains there is insufficient evidence to support the trial court's damages award. TexPro first asserts there is insufficient evidence of a causal connection between the event sued upon and Davis's injuries. The actual damages sought by Davis and awarded by the court equaled the full amount of money Davis paid TexPro. TexPro contends the evidence shows it provided at least some services and materials to Davis. Although Davis stated the work performed was of no value, TexPro maintains his statement was conclusory. TexPro also asserts the trial court erroneously awarded Davis a double recovery.

Once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. *Tex. Commerce Bank, Nat. Ass'n v. New*, 3 S.W.3d 515, 516 (Tex. 1999). A trial court rendering a default judgment must hear evidence of unliquidated damages. TEX. R. CIV. P. 243; *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Davis had the burden of presenting competent evidence of a causal nexus between the event sued upon and his alleged injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). Proving that the event sued upon caused the injuries is part and parcel of proving the amount of damages. *Id.* Affidavits can satisfy rule 243's requirement that the court must hear evidence to support unliquidated damages. *New*, 3 S.W.3d at 517.

The sufficiency of the evidence supporting the amount of unliquidated damages awarded in a default judgment may be challenged by restricted appeal. *Diaz v. Multi Serv. Tech. Solutions Corp.*, No. 05-14-00032-CV, 2014 WL 5768714, at *3 (Tex. App.—Dallas Nov. 6, 2014, no pet.) (mem. op.). Conclusory evidence of damages is legally insufficient to support a default judgment when damages are unliquidated. *McCoy v. Waller Grp., LLC*, No. 05-10-01479-CV, 2012 WL 1470147, at *2 (Tex. App.—Dallas Apr. 26, 2012, no pet.); *see Lefton v.*

*Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Dodd v. Savino*, 426 S.W.3d 275, 293 (Tex. App.—Houston [14th Dist.] 2014, no pet.). If a no-evidence point is sustained as to unliquidated damages resulting from a no-answer default judgment, the appropriate disposition is to remand for a new trial on the issue of unliquidated damages. *Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.).

The trial court awarded Davis all the damages he sought in his motion asking it to enter a final judgment – actual damages of $117,230.50, $350,691.50 in treble damages under the DTPA, $350,000 in exemplary damages for fraud, and $13,308.50 in attorney's fees. The trial court's judgment stated that Davis's actual damages were $117,230.50 under each of three theories – DTPA, breach of contract, and fraud. The evidence before the court consisted of Davis's affidavit, his attorney's affidavit, the parties' contract, and several cancelled checks from Davis to TexPro.

In his affidavit, Davis testified that he paid TexPro $117,230.50 for services due under the contract. The cancelled checks totaled that amount. Thus, the court awarded Davis the full amount he paid TexPro, which was more than the contract price of $114,350.

Per the contract, TexPro was to perform seven elements of work: grade and install a pool deck, install a retaining wall, construct a concrete driveway, install a perimeter fence and pool deck fence, build an outdoor kitchen, install stone columns on the perimeter fence, and build a cabana with a pergola. The contract provided that Davis was to pay the contract price of $114,350 in three roughly equal installments. Davis was to make a down payment "upon agreement of the contract," with another payment due upon completion of "pool deck and drive concrete," and the remainder due upon completion of the work. Instead, Davis paid $117,230.50 in five installments. The first check Davis wrote was for $38,230.50 on August 16, 2012. The

second check was written on September 25, 2012 for $39,000. The next check was dated October 15, 2012 for $20,000. Finally, Davis wrote TexPro two $10,000 checks dated October 25 and November 1, 2012. There is nothing in the record to explain why Davis paid $2,880.50 more than the contract price. Although he stated in his affidavit that TexPro demanded additional unreasonable funds to complete the work and attempted to extort additional funds from him, Davis did not indicate he paid TexPro an additional amount in response to these demands. There is also nothing in the record to indicate why Davis paid in more installments than were called for in the contract.

Under any of the theories of liability involved, the value of any goods and services TexPro provided factors into the measure of damages. *See Zorilla v. Aypco Constr. II, LLC*, No. 14-0067, 2015 WL 3641299, at *7 (Tex. June 12, 2015) (fraud damages are measured under either out-of-pocket measure or benefit-of-the-bargain measure; either requires proof of value received); *Zhu v. Lam*, 426 S.W.3d 333, 339 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (damages under DTPA are either out-of-pocket damages or benefit-of-the-bargain damages); *Brown v. Ogbolu*, 331 S.W.3d 530, 536 (Tex. App.—Dallas 2011, no pet.) (normal measure of damages for breach of contract is benefit-of-the-bargain measure, which seeks to restore plaintiff to economic position it would have been in had contract been performed). A plaintiff may claim the full amount paid for services only if he received performance that was worthless. *See Smith v. Kinslow*, 598 S.W.2d 910, 913–14 (Tex. Civ. App.—Dallas 1980, no writ); *see also Latham v. Burgher*, 320 S.W.3d 602, 610–11 (Tex. App.—Dallas 2010, no pet.) (jury could have rationally believed roofing company's repairs had no value to homeowner); *Mays v. Pierce*, 203 S.W.3d 564, 578 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (in bench trial, court could have found that mold and water remediation services were of zero value).

In his affidavit, Davis testified that, to the extent TexPro did perform services and provide materials, its work was conducted in a poor manner, had no value, and put his property in a worse condition than it was before. He also stated he received "no benefit" from TexPro's work. The following is Davis's description of how TexPro failed to perform or improperly performed:

> TexPro wholly failed to install and failed to properly install plumbing and electrical lines, failed to properly install mortar and grout on the pool deck, failed to construct the retaining wall per the plans for the Project, failed to install the fence as promised, failed to properly sequence the construction of the kitchen, failed to properly build the columns, and failed to build the cabana as promised.

According to Davis, he had to hire another contractor to complete the project at significant additional cost. His affidavit does not indicate how much he had to pay the second contractor or what specific work that contractor did.

Thus, according to Davis's affidavit, TexPro performed some services and provided some materials. His affidavit indicates, at a minimum, that TexPro installed mortar and grout on the pool deck and built the columns, albeit improperly. The affidavit also suggests TexPro did some work on the retaining wall, fence, kitchen, and cabana. We note that under the contract, Davis was not required to make the second installment payment, which he did pay, until the pool deck and concrete drive were complete. Davis did not allege in his pleadings or affidavit that TexPro failed to install or to properly install the concrete drive. And Davis was not required to pay the full contract price, which he did, until the project was complete. Although Davis stated in his affidavit that the work TexPro did was improperly done and had no value, he does not provide any supporting facts to explain how or why the work was so improperly done as to have zero value. As such, his affidavit testimony that the work was worthless was conclusory and amounts to no evidence. As a result, the evidence is insufficient to support the trial court's award of the full amount paid to TexPro as actual damages.

Because we are reversing the actual damage award for new trial, we must also reverse the awards of exemplary damages. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 75–76 (Tex. App.—San Antonio 2007, pet. denied). In light of our disposition, we also reverse and remand the award of attorney's fees for reconsideration. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004) (per curiam) (to be entitled to attorney's fees in breach of contract case, party must recover actual damages); *Paradigm Oil*, 242 S.W.3d at 75. We conclude TexPro has shown error apparent on the face of the record in this regard, and we sustain its fourth issue.

In light of our conclusion that TexPro is entitled to a new trial on damages, we need not reach its third issue. In that issue, TexPro contends it did not receive proper notice of the hearing on damages, which occurred after it answered. Even if we were to sustain this issue, TexPro would be entitled to no greater relief than it is already entitled to under its fourth issue.

We reverse that portion of the trial court's judgment awarding Davis actual damages, punitive damages, and attorney's fees and remand Davis's claims for a new trial on unliquidated damages only. *See* TEX. R. APP. P. 44.1(b). In all other respects, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

140050F.P05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TEXPRO CONSTRUCTION GROUP, LLC, Appellant

No. 05-14-00050-CV        V.

SYLVESTER DAVIS, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-05010.
Opinion delivered by Justice Brown. Justices Bridges and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding actual damages, punitive damages, and attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings.

It is **ORDERED** that each party shall bear its own costs of appeal.

Judgment entered this 19th day of August, 2015.