COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


|  |  |  |
|---|---|---|
| | § | No. 08-22-00148-CV |
| | § | Appeal from the |
| IN THE MATTER OF THE ESTATE OF HELENE PAXTON, Deceased | § | Probate Court No. 2 |
| | § | of El Paso County, Texas |
| | § | Cause No. 2009-P00743-C |

## MEMORANDUM OPINION

Appellees, Andrew V. Barber and C. Frederick Barber, are the adult sons of Helene Paxton, Deceased. Together, the Barber brothers sued several parties to include George Paxton, their mother's surviving spouse, Miriam Lundy, George's adult daughter from a previous marriage, and Appellants Lorri Lister Burnett and David Burnett, the Paxtons' caregivers.[1] The Barbers' suit alleged claims of conversion and mismanagement of community and estate assets. Following the entry of a severance order, Appellants challenge the probate court's granting of a traditional motion for summary judgment against them, contending the Master in Chancery's Report and Financial

---

[1] David Burnett died during the pendency of the litigation in the probate court. David Bonilla was soon substituted as a defendant in the pending case after his appointment and in his capacity as Dependent Administrator of the Estate of David Burnett, Deceased. Bonilla appears as Appellant in this appeal representing the Estate of David Burnett, Deceased. For simplicity, we refer to Lorri Burnett and David Bonilla, Dependent Administrator of the Estate of David Burnett, Deceased, as "the Burnetts."

Analysis (the Master's Report) that formed the basis of the judgment did not conclusively establish the elements of the Barbers' claims as a matter of law. We reverse the probate court's summary judgment and remand the matter for proceedings consistent with this opinion.

## I. BACKGROUND

The Barbers are Helene Paxton's sons from a prior marriage.[2] At the time of her death in 2009, Helene was married to George Paxton. In 2002, at Frederick Barber's request, Lorri Burnett moved into the Paxtons' home to help care for Helene.[3] From 2002 through 2006, Lorri lived in the Paxton's home, serving as Helene's primary caregiver during that time.

In 2006, the Paxtons moved to an adult living center. David Burnett soon purchased the Paxtons' home from George, and he and Lorri married the following year.[4] The Burnetts began renovating the home, primarily to accommodate their caregiving of family, including Andrew Barber's mother-in-law, whom they expected to soon move in, along with George's adult daughter, who had severe disabilities. The Burnetts reviewed their renovation plans with the Barbers, and they approved of the work. In February 2008, the Burnetts completed renovations and the Paxtons moved back into the home with the Burnetts.

On June 18, 2009, Helene died at the age of 86. In July 2009, Andrew applied to probate her will and for letters testamentary, claiming that George was not qualified to serve although he had been named as executor in Helene's will. Andrew alleged George had a conflict of interest, claiming there were disputes over the characterization of certain assets as community or separate

---

[2] Because there are multiple parties with the same surnames, we refer at times to parties by their given names for clarity and succinctness.

[3] Lorri knew the Paxtons for many years and she had experience in the medical field as she had previously worked as an emergency room technician and ICU technician at various hospitals in El Paso.

[4] David Burnett died after summary judgment was granted, but before the matters were severed.

property, Helene's name had been removed from various accounts shortly before her death, and transfers of property to third persons constituted fraud on the community.

In Helene's will, she devised all of her property to the H & G Paxton Trust. George and Helene established the trust in 1999 and they both were named as Trustees. The Trust was to expend the net income and corpus, if necessary, for "the proper health care, support and maintenance" of George and Helene. A portion of the Trust assets were listed on two exhibits attached as Exhibits G and H to the Trust Indenture. The Trust Indenture provided that Exhibit H assets were to be distributed to Helene's adult sons, the Barbers, upon her death. The remaining Trust assets were to be divided into two new trusts, Trust G and Trust H. Upon George's death, Trust G and Trust H terminate. The Trust Indenture provided that remaining assets in Trust G, if any, were to be distributed to George's daughter; and any remaining assets in Trust H were to be distributed to the Barbers.

In December 2009, the Barbers sued George and the Burnetts.[5] The suit alleged that George dissipated the Paxtons' community estate in violation of the H & G Paxton Trust Indenture and Helene's will, and it sought imposition of a constructive trust. The Barbers alleged the Burnetts aided and abetted George and knowingly participated in his breaches of fiduciary duty. The Barbers claimed the Burnetts conspired with George by engaging in self-dealing by making inappropriate distributions of Trust assets and community assets to themselves and others. The Barbers also alleged the Burnetts conspired with George to remove assets from the Trust and the community estate and assign ownership and co-ownership designations to those assets, such as

---

[5] We note that George's adult daughter from a previous marriage, Miriam Lundy, was also named as a defendant in the Barbers' suit. Lundy, for her part, asserted similar tort and conspiracy claims against the Burnetts and the Barbers, and as well, filed a separate suit against David Burnett to void George's sale of the home to him. Lundy's claims against the Burnetts and Barbers are not at issue in this appeal.

Pay on Death designations, to disinterested parties. As pleaded, all the Barbers' causes of actions against the Burnetts were dependent on George's activities. There were no allegations of the Burnetts directly transferring Estate or Trust funds, only that they conspired with or aided and abetted George in his wrongful activities.

During the course of almost a year of proceedings, the probate court ordered George to undergo an independent medical examination and appointed an ad litem for him. Based on the results of the examination, the Barbers moved to disqualify George from serving as executor of Helene's estate and remove him as a Trustee of the H & G Paxton Trust. The probate court granted the motion and Andrew was appointed as executor of Helene's estate in 2010.

George's ad litem moved for the appointment of a Master in Chancery to "conduct an analysis of financial records" of Helene's estate, urging that the "trier of fact would be greatly aided in having an independent financial analysis or audit of all financial transactions at issue" and that the analysis "would also have the possible benefit of narrowing the scope and reducing the potential cost of the litigation." The probate court granted this motion and appointed a CPA as a Master in Chancery, authorizing him to conduct "an analysis of all financial records" in the case, ordering all parties to produce all documents to him within a reasonable period, but granting no additional powers to the Master and ordering no additional actions from him.

The Master in Chancery sent his financial analysis to the parties in September 2012 and filed it in January 2013. An income statement attached to the Master's Report showed that the Estates of Helene and George Paxton had spent $221,635.04 on repairs to the Burnetts' residence between June 2008 and April 2012. The statement also showed the Estates had made payments to David Burnett totaling $63,370.60 and to Lori Burnett totaling $105,089.00. The Burnetts did not object to the Master's Report; and, in March 2015, the probate court ordered the Master in

4

Chancery's Report and Financial Analysis is "**ACCEPTED** and **CONFIRMED**, and deemed **CONCLUSIVE**."

In December 2015, the Barbers moved for traditional summary judgment based solely on the Master's Report. The Barbers argued there was no genuine issue of material fact with respect to the distributions for home repairs after Helene's death, nor genuine issue of material fact as to the distributions to the Burnetts, as the Report conclusively established such distributions were made. The Barbers alleged it was undisputed that the amounts paid to the Burnetts after Helene's death could not have been made for her care, well-being, and benefit. The motion further averred it was undisputed that the payments for the home repairs benefitted the Burnetts and not Helene.

In response, the Burnetts challenged the probative weight of the Master's Report, contending it failed to conclusively establish there were no genuine issues of material fact. Specifically, the Burnetts asserted the Master's Report merely established that certain payments had been made either to the Burnetts directly or for their possible benefit. Fundamentally, they argue the Report did not characterize the funds the Barbers had sought to recover from the Burnetts as either community property, assets of the Trust, or assets of Helene's Estate. With their response, the Burnetts included an affidavit of Lorri Burnett. The affidavit averred that: "Each of the accounts [the Master] has identified from which checks were written to me, to my husband and to the persons who provided services and materials in connection with the work on our residence were Mr. Paxton's separate property and were not contributed to the Trust."

The probate court granted the Barbers' motion in March 2018, ordering that the Barbers recover from the Burnetts, jointly and severally, $221,560.04 for the home repairs; $54,954.30 for the funds paid to David after Helene's death; and $42,700.00 for the funds paid to Lorri after Helene's death; for a total of $319,214.34 in actual damages; plus, pre-judgment interest in the

amount of $131,675.90. After the Barbers severed certain remaining claims in September 2021, the summary judgment became final and appealable. From this final summary judgment, the Burnetts appeal.

## II. ISSUES ON APPEAL

The Burnetts raise two issues on appeal. First, they argue the probate court erred in granting the Barbers' motion for summary judgment. Second, they urge the Master's Report failed to conclusively establish every element of the Barbers' cause of action against the Burnetts.

In response, the Barbers first contend the Burnetts bring an improper collateral attack on the Master's Report and the order confirming it. They contend the confirmation order was a final and appealable order as of 2015. Second, on the merits of the summary judgment, the Barbers contend the Master's Report conclusively established the payments at issue were made from Helene Paxton's Estate, and the probate court did not err in granting their motion for summary judgment.

We first consider and dispose of the jurisdictional question raised by the parties' arguments.

## III. JURISDICTION

Before reaching the merits of the summary judgment, we first consider the timeliness of this appeal. In their briefing, the Barbers claim the Burnetts bring an improper collateral attack against the probate court's order confirming the Master's Report by means of their challenge against the probate court's summary judgment. Specifically, the Barbers contend the probate court's order confirming the Master's Report was a final order as of March 11, 2015, and thus, it is no longer subject to being challenged over seven years later. Although not expressly couched as a jurisdictional challenge, we construe this argument as questioning our jurisdiction, which we

6

address as a preliminary issue. We are obligated to resolve a jurisdictional inquiry before proceeding to the merits of an appeal. *See In re Estate of Morales*, 345 S.W.3d 781, 783 (Tex. App.—El Paso 2011, no pet.).

We have jurisdiction over appeals from both interlocutory orders as authorized by statute and from final judgments. *Cosentino v. Frost Bank*, No. 05-21-00829-CV, 2022 WL 472799, at *2 (Tex. App.—Dallas Feb. 16, 2022, no pet.) (mem. op.) (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992); *see* TEX. ESTATES CODE ANN. § 32.001(c) ("A final order issued by a probate court is appealable to the court of appeals."). "Generally, a judgment is final if it (1) follows a conventional trial on the merits; (2) actually disposes of every pending party and claim; or, (3) 'clearly and unequivocally' states it finally disposes of all parties and claims even if it does not actually do so." *Cosentino*, 2022 WL 472799, at *2 (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205-06 (Tex. 2001)).

In probate cases, an order that does not dispose of the entire proceeding may be considered a final order for purposes of appeal. *See Crowson v. Wakeham*, 897 S.W.2d 779, 781-82 (Tex. 1995). Even when other issues remain pending, such order may be final if by statute that phase of the probate proceeding is final and appealable; or the judgment adjudicates a "substantial right" and disposes of all issues and parties "in the phase of the proceeding for which it was brought." *Brittingham-Sada de Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (quoting *Crowson*, 897 S.W.2d at 783).

Our jurisdiction over this appeal, however, does not depend on the finality of the probate court's order confirming the Master's Report. Rather, the appeal is perfected against the severance order that made final the summary judgment entered against the Burnetts. *Cosentino*, 2022 WL 472799, at *2. The summary judgment purported to grant relief against the Burnetts based on the

7

Barbers' motion for summary judgment and awarded damages against the Burnetts. After the probate court entered the order granting summary judgment, the Barbers moved to sever the actions and parties so that the summary judgment would be final and appealable. As a result, the order severing the proceeding against the Burnetts made the summary judgment previously entered against them final and appealable. It is from the order severing the proceeding that the Burnetts took their appeal. Because the notice of appeal challenging that order was timely filed, we have jurisdiction over that final order. *See id.*

Related to that determination, we do not view the Burnetts' appeal as a collateral attack against the order confirming the Master's Report as is argued by the Barbers. A collateral attack is a party's attempt to obtain relief impeded by the binding effect of a previous judgment. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020). Generally, collateral attacks are prohibited by the law's policy of giving finality to judgments. *Id.* "Only a void judgment may be collaterally attacked." *Id.* And here, the Burnetts bring no claim asserting the confirming order was void, or that it lacked a binding effect as a whole. Instead, the Burnetts claim that neither the underlying Master's Report, nor the related confirming order, adjudicate anything relevant to the claims at issue. *See Mackie*, 193 S.W.3d at 579. Specifically, the Burnetts challenge the probate court's granting of summary judgment based on the Barbers' assertion that the Master's Report alone conclusively established the elements of their causes of action. *See* TEX. R. CIV. P. 166a(c) (establishing the burden of proof on a traditional motion for summary judgment). We view that assertion as raising a question on the merits of the summary judgment itself, not an attack against the validity of the court's confirming order.

We conclude this appeal is not an improper collateral attack, and we have jurisdiction because it is an appeal from a final order—that is, the order severing the Barbers' causes of action against the Burnetts after granting their motion for summary judgment.

## IV.  SUMMARY JUDGMENT

In their first issue, the Burnetts assert the probate court erred in granting summary judgment because the Barbers failed to conclusively prove their causes of action against them. In their second issue, they claim the Master's Report failed to conclusively establish every element of the Barbers' causes of action as a matter of law.

We address these issues together.

### A.  Standard of Review

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022) (internal quotations marks omitted). "A party that moves for traditional summary judgment must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id*.; TEX. R. CIV. P. 166a(c). Notably, "[t]he nonmovant has no burden to respond . . . unless the movant conclusively establishes its cause of action or defense." *Wallace*, 642 S.W.3d at 509 (internal quotation marks omitted).

When the order granting summary judgment does not specify the grounds relied on for the ruling, we affirm the summary judgment if any of the theories advanced in the trial court and preserved for appeal are meritorious. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).

**B. Applicable Law**

A party moving for traditional summary judgment must "state the specific grounds therefor." TEX. R. CIV. P. 166a(c); *Stillwell v. Stevenson*, 668 S.W.3d 844, 851 (Tex. App.—El Paso 2023, pet. denied). A plaintiff moving for traditional summary judgment must establish conclusively each element of the cause of action upon which they seek summary judgment. *See Stillwell*, 668 S.W.3d at 851. "[T]he motion must identify the cause of action and its elements." *Id.* (citing *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990)). A party is not entitled to summary judgment "on a cause of action not raised in the motion. In considering whether the grounds are expressly presented, appeals courts look 'only to the motion itself' and do not rely on briefs or summary-judgment evidence." *Id.* (cleaned up).

The Barbers brought claims of conspiracy and aiding and abetting against the Burnetts based on their involvement with George in the alleged breach of his fiduciary duty and self-dealing. There are five elements to establish an action for civil conspiracy:

> (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). "[A]n actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means." *Id.*

In *Parker*, the Supreme Court of Texas reiterated that it "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *Id.* at 224. Even still, courts addressing such claim have generally opined it would nevertheless require proof "that the defendant's conduct in assisting or encouraging the primary tortfeasor was a substantial factor in causing the tort."

10

*Reynolds v. Sanchez Oil & Gas Corp.*, No. 01-18-00940-CV, 2023 WL 3311116, at \*9 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.) (mem. op.). To the extent such claim is actionable in Texas, its elements are: "(1) the primary actor committed a tort; (2) the defendant knew that the primary actor's conduct constituted a tort; (3) the defendant intended to assist the primary actor; (4) the defendant gave the primary actor assistance or encouragement; and (5) the defendant's conduct was a substantial factor in causing the tort." *Id*.

## C. Analysis

As stated above, the Burnetts moved for traditional summary judgment based solely on the report of the Master in Chancery. The Burnetts bore the burden of establishing each element of each of their causes of action as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022).

Rather than proving up the elements of their causes of action against the Burnetts, the Barbers' motion stated, "since this Court has already found the [Master's Report] conclusive, the Court should grant . . . Summary Judgment against [the Burnetts], based on that conclusive [Master's Report]." The motion then cites the Master's Report regarding the amounts of transfers from Helene's Estate for repairs to the Burnetts' home and transfers to both David and Lorri after Helene's death. Thereafter, without citing the Master's Report or any other evidence, the motion states,

> Consequently, it is undisputed in the Master's Report that the [portion of the monies paid to David and Lorri after June 19, 2009] were after the date of [Helene's] death, and could not have been for the care, well-being and benefit of [Helene].
> Moreover, it is undisputed that the [monies for the home] Repairs . . . benefited that home's owners, [David and Lorri,] and not the Decedent, [Helene].

11

On review of the record, we disagree with the Barbers' assertion that the Master's Report conclusively established every element of their causes of action.

In exceptional cases and for good cause, a court may appoint a master in chancery to perform all duties required by the court. TEX. R. CIV. P. 171. The court's order referring to the master may "specify or limit [the master's] powers," directing him or her to report on particular issues, perform particular acts, or receive and report evidence only. *Id*. "The court may confirm, modify, correct, reject, reverse or recommit the report[.]" *Id*. "If no proper objection is made to the master's report before the trial court adopts it, the report becomes conclusive on the issues considered by the master." *Lesikar v. Moon*, 237 S.W.3d 361, 371 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

The Master provided his Report to the parties in September 2012 and filed it of record in January 2013. At no time before the probate court entered its order confirming the Master's Report did any party object to the Report, as was their duty if they were dissatisfied with it. *Lesikar*, 237 S.W.3d at 371. Thus, the issues determined in the Master's Report are deemed final. *Minnich v. Jones*, 799 S.W.2d 327, 328 (Tex. App.—Texarkana 1990, no pet.); *Lesikar*, 237 S.W.3d at 371; *Young v. Young*, 854 S.W.2d 698, 701 (Tex. App.—Dallas 1993, pet. denied).

Nevertheless, the Master's Report alone does not conclusively establish the Barbers' entitlement to judgment as a matter of law on every element of their causes of action. The Barbers' causes of action against the Burnetts were for constructive trust, conspiracy, and aiding and abetting a breach of fiduciary duty, and self-dealing. When moving for summary judgment, they did not raise any of these causes of action in their pleading, did not list the elements of any of their causes of action. and did not provide evidence conclusively establishing each element of any of

12

the claims. Rather, the Barbers simply advanced the Master's Report as the conclusive and exclusive evidence supporting their motion.

By its own terms, the Master's Report analyzes all financial records in Helene's Estate. Further, it establishes that certain transactions were made for the purpose of renovating the Burnetts' home and monies were transferred to David and Lorri both before and after Helene's death. These facts alone, however, do not adjudicate nor conclusively prove every element of the causes of action against the Burnetts.

Returning to the causes of actions brought against the Burnetts, we first note that a constructive trust is a remedy rather than a cause of action. *Gray v. Sangrey*, 428 S.W.3d 311, 317 (Tex. App.—Texarkana 2014, pet. denied); *see May v. Little*, 473 S.W.2d 632, 635 (Tex. App.—El Paso 1971, writ ref'd n.r.e.) (constructive trust is a remedial concept and fraud of some type, including breach of fiduciary duty, must be present for it to be imposed). Thus, proof of its elements alone would not sustain a motion for summary judgment. Nor is civil conspiracy a separate cause of action; the Texas Supreme Court has held that an underlying tort must be proved to prevail on a claim for civil conspiracy. *See Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

More importantly, the Master's Report did not supply conclusive proof of the Barbers' causes of action for civil conspiracy or aiding and abetting a breach of fiduciary duty because both these causes of action require a showing of intent. *See First United Pentecostal Church*, 514 S.W.3d at 222; *Reynolds*, 2023 WL 3311116, at *9. Neither the motion for summary judgment nor the Master's Report provided any evidence of intent on the part of the Burnetts, thus neither of these claims has been conclusively proven as a matter of law.

13

By its scope, the Master's Report did not address intent on the part of the Burnetts. Indeed, the probate court's order appointing the Master did not direct him to receive evidence regarding intent or to report on it. Although the probate court's order adopting the Master's Report stated that the Master's Report was "deemed conclusive" and the time for objecting to it had expired, it alone cannot conclusively establish every element of the causes of action, when none were adjudicated nor addressed. *See Lesikar*, 237 S.W.3d at 371 (absent objection, a master's report is conclusive *on the issues considered* by the master).

By relying solely on the Master's Report in their motion for summary judgment, the Barbers failed to meet their burden of conclusively establishing all the elements of their causes of action against the Burnetts such as to demonstrate they were entitled to summary judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Zive*, 644 S.W.3d at 173; *Zavala v. Franco*, 622 S.W.3d 612, 618 (Tex. App.—El Paso 2021, pet. denied).

We sustain the Burnetts' first and second issues.

## V. CONCLUSION

Having determined the Barbers did not sustain their burden of proving entitlement to summary judgment as a matter of law, we reverse the probate court's granting of summary judgment in their favor and remand this matter for proceedings consistent with this opinion.

GINA M. PALAFOX, Justice

August 23, 2023

Before Palafox, J., Soto, J., and Marion C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

14