

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00043-CV

ELIZABETH SANGREY GRAY AND TOMMY DEAN GRAY, JR., Appellants

V.

VERNA PAULINE SANGREY, Appellee

On Appeal from the 276th District Court
Marion County, Texas
Trial Court No. 10-00006

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# OPINION

Verna Pauline Sangrey[1] brought suit against her daughter, Elizabeth Sangrey Gray, and her son-in law, Tommy Dean Gray, Jr. (collectively referred to as the Grays), seeking to impose a constructive trust against a house and lot that had been deeded to the Grays. Specifically, Sangrey alleged that the parties had a mutual understanding whereby the Grays would take out a loan to purchase the house and lot in Jefferson, Texas, adjacent to their own, and once Sangrey fully satisfied the debt incurred in the purchase and the lien securing it was released, they would transfer title to Sangrey. As Sangrey was unavailable to testify at trial because of the apparent onset of senility, the trial court admitted, over the Grays' hearsay objections, testimony regarding the content of the alleged agreement. It was undisputed and established by competent evidence that Sangrey paid the down payment on the home, moved in, satisfied the note installments until her home elsewhere had been sold, and, upon the sale of Sangrey's former home, fully satisfied the outstanding balance of the lien. The Grays refused to transfer title to Sangrey.

After a bench trial, the trial court found that a confidential relationship existed between Sangrey and Elizabeth, that Elizabeth breached her fiduciary duty to Sangrey, and that the Grays failed to prove the transaction between them and Sangrey was fair. The court imposed a constructive trust on the Jefferson house in Sangrey's favor. After the trial court entered judgment and findings of fact and conclusions of law, the Grays appealed.

On appeal, the Grays contend that the trial court erred (1) by admitting and considering the hearsay testimony of Sangrey to establish the constructive trust, (2) by finding Sangrey had a

---

[1]The suit was instituted and prosecuted by Sangrey's brother, Vernon Fritz, on her behalf pursuant to a power of attorney that she had given to him.

2

confidential relationship with Elizabeth; (3) by basing its finding that a confidential relationship existed (alleging that no valid evidence supports that finding), and (4) by imposing a constructive trust against Tommy's separate interest in the Jefferson house.

We affirm the trial court's judgment.

## I.      Factual Background

In November 2006, Tommy and Elizabeth Sangrey purchased a house and lot in Jefferson, Texas (the property or the Jefferson house) that abutted their own residence. They were not married at the time and purchased the property in their individual names. Tommy and Elizabeth were planning to marry in 2007, and Elizabeth testified that Sangrey made the $15,029.91 down payment on the Jefferson house as a wedding gift to her. Tommy and Elizabeth married in July 2007.

Sangrey made the down payment on the Jefferson house in November, moved into the property in either November or December 2006 (shortly after the closing of the purchase), paid the monthly mortgage installment for December 2006, and possibly paid the installment for January 2007. In late January 2007, Sangrey sold her house in Gladewater, Texas, and applied $76,131.70 of the $85,008.89 net proceeds to pay off the mortgage on the Jefferson house the very next day. Sangrey lived in the Jefferson house for about three years until suffering a stroke in 2009. At that point, her medical condition precipitated a need for her to relocate into a nursing home. It was during the determination of the means by which Sangrey was to pay for her future nursing care that a dispute arose over the status of the title to the Jefferson house.

3

In her suit against Elizabeth and Tommy, Sangrey sought to impose the title to the Jefferson house and property with a constructive trust in her behalf.  In support of that claim, Sangrey alleged that the parties had a mutual understanding whereby Elizabeth and Tommy would purchase the Jefferson house in their names and, upon payment of the purchase price by Sangrey, would transfer title to her. Elizabeth and Tommy answered Sangrey's allegations with a general denial, and raised the defenses of limitations, and laches, and the interposition of the statute of frauds.

It was undisputed that Sangrey paid the down payment on the home, paid the monthly mortgage installments, paid for improvements to the home, moved into the home, and paid off the mortgage, but the Grays refused to transfer title.  In addition to Elizabeth's allegation that the down payment was a wedding gift to her and Tommy, she testified that Sangrey's subsequent act of satisfying the Jefferson mortgage was "[Sangrey's] decision."  Prior to the transaction, Elizabeth, a trained nurse, helped Sangrey when her medications were changed. Before the transaction, Elizabeth and Tommy consistently went to Sangrey's Gladewater home once every week or two where they made any needed home repairs, mowed and landscaped the yard, and performed any other home maintenance Sangrey needed.  Elizabeth testified that no one in the family spent more time assisting Sangrey than she (Elizabeth) did.  She also testified that after the transaction was completed, (1) she paid Sangrey's bills when Sangrey was "hospitalized several times," (2) she had access to Sangrey's checkbook, (3) she cared for Sangrey at the Jefferson house after her hospitalizations due to a car accident, a knee replacement, a hip replacement and cataract surgery, (4) she spent time trying to obtain Veterans' Affairs benefits

4

for Sangrey, and (5) she moved Sangrey into one nursing home facility. After first entering one nursing home facility, Elizabeth relocated her to another because she believed the second facility would provide better care. None of this background information was contested by Sangrey. Even so, little of this material found its way into the trial court's findings of fact. Fact-findings are not necessary when the matters in question are not disputed. *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006). A trial court has no need to make findings concerning facts that are admitted. *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 728 (Tex. App.—Corpus Christi 2006, pet. denied).

Also during the bench trial, the court admitted, over the Grays' hearsay objections, testimony from Sangrey's son and brother and from an attorney who had visited with Sangrey. These witnesses testified regarding the content of prior statements allegedly made by Sangrey concerning her agreement with Elizabeth and Tommy pertaining to the purchase of the Jefferson house. In the months preceding trial, Sangrey's mental status had deteriorated to the point that she was unavailable to testify at trial.

The trial court found that the down payment for the purchase of the Jefferson house was not a gift, that a confidential relationship existed between Sangrey and Elizabeth, that Elizabeth had breached her fiduciary duty, and that the Grays failed to prove the transaction between them and Sangrey was fair. Based on those fact findings, the trial court held that ownership of the Jefferson house was subject to a constructive trust in favor of Sangrey. After the trial court entered findings of fact and conclusions of law, the Grays appealed.

5

## II. Analysis

### A. Constructive Trust

A constructive trust is a legal fiction, a creation of equity to prevent a wrongdoer from profiting from her wrongful acts. *Procom Energy, L.L.A. v. Roach*, 16 S.W.3d 377, 381 (Tex. App.—Tyler 2000, pet. denied). Such trusts are remedial in character and have the broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. *Id.*; *see also Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied). To obtain a constructive trust, the proponent must prove (1) the breach of a special trust, fiduciary relationship, or actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable res. *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.); *Hubbard*, 138 S.W.3d at 485. "'A constructive trust is a relationship with respect to property, subjecting the person by whom the title to the property is held to an equitable duty to convey it to another, on the ground that [her] acquisition or retention of the property is wrongful and that [she] would be unjustly enriched if [she] were permitted to retain the property.'" *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied) (quoting *Talley v. Howsley*, 176 S.W.2d 158, 160 (Tex. 1943)). The Grays primarily challenge the trial court's finding of the existence of a confidential relationship, so we address that issue first.

### 1. Did the trial court err in finding a confidential relationship?

In their second and third points of error, the Grays argue that the trial court erred in finding that a confidential and fiduciary relationship existed between Elizabeth and Sangrey.

6

In evaluating the decisions made in this case, we are presented with two different considerations that may, at first blush, appear to be somewhat contradictory. On the one hand, the general rule is that the determination of the existence of a confidential fiduciary relationship is normally a question for the trier of fact. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). On the other hand, although the confidential relationship issue generally rests on the establishment of certain facts, when the underlying facts are undisputed, "determination of the existence and breach of a fiduciary duty is a question of law that is exclusively within the province of the court." *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 678 (Tex. App.—Fort Worth 2010, no pet.).

> As our sister court in Amarillo has observed,
>
> The establishment of a fiduciary relationship is significant because the Texas Supreme Court has held that a fiduciary's misconduct may be inherently undiscoverable. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988); *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (1945). . . . When the fact of a fiduciary's misconduct becomes apparent, the person owed the fiduciary duty is no longer relieved of the duty to exercise reasonable care and diligence to discover the existence of a cause of action. *See id.*; *Willis*, 760 S.W.2d at 646.

*West v. Proctor*, 353 S.W.3d 558, 566 (Tex. App.—Amarillo 2011, pet. denied).

Further, once the confidential relationship imposes the fiduciary relationship, it is "upon the profiting fiduciary the burden of showing the fairness of the transactions." *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 509 (Tex. 1980).

There are two types of fiduciary relationships in Texas: (1) a formal fiduciary relationship arising as a matter of law, such as between partners or an attorney and a client, and (2) an informal or confidential fiduciary relationship arising from a moral, social, domestic, or

7

merely personal relationship where one person trusts in and relies upon another. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992); *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.).

A confidential fiduciary relationship may exist where influence has been acquired and abused or where confidence has been reposed and betrayed. *Crim Truck & Tractor*, 823 S.W.2d at 594. Whether a confidential relationship exists is "determined from the actualities of the relationship between the persons involved." *Thigpen & Locke*, 363 S.W.2d 247, 253 (Tex. 1962). "The problem is one of equity[,]" and the circumstances giving rise to the confidential relationship "are not subject to hard and fast lines." *Moore*, 595 S.W.2d at 508. Factors include whether the plaintiff relied on the defendant for support, the plaintiff's advanced age and poor health, and evidence of the plaintiff's trust. *See Trostle v. Trostle*, 77 S.W.3d 908, 914–15 (Tex. App.—Amarillo 2002, no pet.); *see also Lee v. Hasson*, 286 S.W.3d 1, 14–16 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Hatton v. Turner*, 622 S.W.2d 450, 458 (Tex. Civ. App.—Tyler 1981, no writ); *Holland v. Lesesne*, 350 S.W.2d 859, 862 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.). A familial relationship, while considered a factor, does not by itself establish a fiduciary relationship. *Moore*, 595 S.W.2d at 508.

Here, Elizabeth contends that the trial court erred in finding that a confidential fiduciary relationship existed between her and Sangrey. Elizabeth's uncontradicted testimony (as recited above) amounts to uncontested evidence of the existence of a trust relationship between mother and daughter. Prior to the transaction, there is a consistent pattern of care and assistance that rises above mere acts of child/parent kindness for an extended period of time, and that pattern

continued and intensified when Sangrey moved next door to Elizabeth. Even though there is testimony that Sangrey (who was 83 years old at the time of the transaction) was in full control of her mental faculties prior to and during the transaction, based on the entire record, there is sufficient uncontested evidence to support the trial court's finding (either as a matter of fact or as a matter of law) that a confidential relationship existed between Sangrey and her daughter, Elizabeth. Therefore, we overrule these points of error.

### 2. Was the hearsay testimony admissible?

As stated above, Sangrey did not testify at trial because of her diminished mental condition. During the trial, Sangrey's son, Sangrey's brother, and an attorney with whom she had visited were permitted to testify, over the Grays' objections, to Sangrey's alleged statements regarding the details of an agreement between the Grays and her wherein they would purchase the Jefferson house, she would sell her home in Gladewater, she would pay off the mortgage on the Jefferson house with the Gladewater proceeds, and then they would convey the property to her. In their first point of error, the Grays contend (1) that this testimony was inadmissible hearsay, (2) that the trial court erred by allowing the hearsay statements into evidence, and (3) that the trial court erred by relying on the statements to establish a constructive trust.[2]

We need not determine whether the trial court erred in admitting the hearsay testimony because a breach of fiduciary duty was shown by other competent, admissible evidence. As stated above, the testimony of Elizabeth is sufficient to establish the existence of a confidential relationship. It is undisputed that Sangrey supplied the funds required to pay for the down

---

[2]We note that a constructive trust is a remedy, rather than a cause of action.

9

payment for the purchase of the Jefferson house, the title of which was taken in the name of her daughter, Elizabeth, and the daughter's soon-to-be husband, Tommy. After its acquisition, Sangrey paid for improvements to the property and satisfied the remaining balance of the purchase price out of her solely-owned assets. Therefore, even without the hearsay testimony to which the Grays objected, there is sufficient evidence in the record from which the trial court could have found a transaction between the fiduciary and the principal.

Texas appellate courts have held that when a fiduciary transacts with the principle or accepts a gift[3] or bequest from the principal, a burden is placed on the fiduciary to demonstrate the fairness of the transaction. *See Young v. Fawcett*, 376 S.W.3d 209, 216 (Tex. App.—Beaumont 2012, no pet.); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (noting that fiduciary has "duty to deal fairly with the principal in all transactions between them"); *Gatlin v. GXG, Inc.*, No. 05–93–01852–CV, 1994 WL 137233, at *5 (Tex. App.—Dallas Apr. 19, 1994, no writ) (per curiam) (not designated for publication); *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ) (noting that "[a]ll transactions between the fiduciary and his principal are presumptively fraudulent and void").

As stated above, the undisputed evidence (including the testimony of Elizabeth herself) is sufficient to establish the existence of a confidential relationship and a transaction between the principal and the fiduciary. Those findings give rise to unjust enrichment unless the Grays

---

[3]Despite the Grays' argument to the contrary, the trial court found that the $15,029.91 down payment was not a gift. The Grays do not challenge that finding on appeal.

otherwise demonstrated the fairness of the transaction. The trial court found that a transaction occurred between the Grays and Sangrey and that Elizabeth and Tommy failed to prove that the transaction was fair. The Grays do not challenge those findings on appeal.[4] We find that sufficient admissible evidence supports the trial court's challenged findings and conclusions, and therefore, we need not determine whether the trial court erred in admitting the hearsay testimony. Even if the admission of such testimony was error, it would be harmless error.

### 3. Should the judgment be limited to Elizabeth Sangray?

In their final point of error, Elizabeth and Tommy, citing provisions of the Texas Family Code, contend that the trial court erred by imposing a constructive trust against Tommy's separate property interest in the Jefferson house. We disagree.

A constructive trust is imposed on property so that the owner may be held to account as trustee and so that the property may be followed into the hands of third persons who are not innocent purchasers. *Blankenship v. Citizens Nat'l Bank of Lubbock*, 449 S.W.2d 77, 79 (Tex. Civ. App.—Amarillo 1969, writ ref'd n.r.e.); *see also Dyll v. Adams*, 167 F.3d 945, 948 (5th Cir. 1999) (under Texas law, court may even impose constructive trust on totally innocent beneficiaries of wrongful act). Here, Tommy made neither a plea nor presented any testimony that he was an innocent purchaser.

Tommy and Elizabeth argue in the alternative, that if Sangrey's claims are affirmed, Tommy is entitled to "reimbursement for his share of expenses spent on the house and his share of all ad valorem taxes spent on the house to date, as well as his one-half of any increase in value

---

[4]At trial, the Grays argued that Sangrey failed to meet her burden of proof rather than attempting to prove the transaction was fair.

of the house."  The right of offset, set-off, or reimbursement against damages is an affirmative defense which must be pleaded and proved by the party asserting it.  *See Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162, 166 (Tex. App.—San Antonio 1993, writ denied).  Generally, an affirmative defense must be pled in a responsive pleading, or the defense is waived.  TEX. R. CIV. P. 94; *Shoemake v. Fogel, Ltd*., 826 S.W.2d 933, 937 (Tex. 1992).  Here, this defensive claim is waived because the Grays failed to plead and argue it at trial.  Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     January 3, 2014
Date Decided:       February 20, 2014

12