

# NUMBER 13-23-00021-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF BRIAN LEE DOSS, DECEASED

### ON APPEAL FROM THE COUNTY COURT
### OF MATAGORDA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Chief Justice Contreras**

Appellant/cross-appellee James Doss (James), individually and as partner of Doss Brothers Partnership (DB), and appellee/cross-appellant Mary Alice Doss (Mary), challenge the trial court's judgment in this dispute arising in the context of a probate proceeding. By four issues, James argues that the trial court erred in (1) dismissing his claims against Mary individually under Texas Rule of Civil Procedure 91a, (2) dismissing his claims against Mary in her representative capacity via summary judgment, (3) granting summary judgment in favor of Mary on her breach of contract counterclaim, and

(4) awarding attorney's fees and costs to Mary. By two issues on cross-appeal, Mary argues the trial court erred by granting summary judgment dismissing her breach of fiduciary duty counterclaim against James and her request for exemplary damages. We affirm in part and reverse and remand in part.

## I.    BACKGROUND

Brian Lee Doss died on or about January 19, 2020, and his will named his wife Mary as independent executor of his estate. On February 5, 2020, Mary filed an application for probate in the County Court of Matagorda County. On May 20, 2020, Brian's uncle James filed a petition in the probate proceeding alleging the following facts:

> James Doss along with his two brothers, William "Bill" Doss and Wilbur Doss, formed [DB] about 42 years ago, each having a one-third (1/3) ownership interest. William "Bill" Doss died in 2014 and left 50 percent of his share to James Doss and the other 50 percent to Brian Doss. The partnership ownership after Bill Doss'[s] death was 3/6 James Doss and 3/6 Brian Doss. Plaintiff James Doss wanted to hire an outside person to keep up with the [DB] water, land and feed and Defendant Brian Doss did not want anyone from outside coming in to run [the] business. Plaintiff James Doss always tried to ask Defendant Brian Doss if he could come down to help with anything in the business as James Doss lived in Oklahoma. Defendant Brian Doss always refused the help from Plaintiff James Doss and said he had it handled. Defendant Brian Doss took steps to keep Plaintiff James Doss in the dark as to finances and legal dealings. The only information Plaintiff James Doss received was from Defendant Brian Doss.

James sought "reimbursement of the partnership funds Defendant Br[ia]n Doss embezzled for his personal use or partnership assets withheld from Plaintiff," asserting claims for breach of the duty of loyalty, breach of contract, conversion, and fraud. James named the estate, Mary in her capacity as executor, and DB itself as defendants. He requested actual and exemplary damages, injunctive relief, and attorney's fees, and he claimed that all defendants acted in a joint enterprise and were vicariously liable for each other's actions.

In James's third amended petition, filed on April 16, 2021, Mary was named as a defendant in her individual capacity[1] and as executor of Brian's estate. The third amended petition made the same claims as the original petition but added the following additional factual allegations:

Defendant Mary Doss was Brian Doss'[s] wife. Defendant Mary Doss directly, and through her community interest in the marriage, embezzled and/or misappropriated partnership assets. Defendants took steps to keep Plaintiff James Doss in the dark as to the partnership finances and legal dealings. Plaintiffs['] repeated requests for information, an inventory, or accounting, were denied. Plaintiff James Doss had to trust that the partnership share money received annually from Defendant Brian Doss was correct. Defendant Brian Doss sold partnership assets and did not give Plaintiffs their full share. Mary Doss then started her own "cattle company" around 2015. Defendant Mary Doss began directly diverting and selling partnership assets. Defendant Mary Alice Doss, [i]ndividually, and as Mary Doss Cattle Company sold partnership assets and did not give Plaintiffs their full share. Defendants paid personal expenses from partnership assets. Defendants made excessive and unequal payments of income to themselves. Defendants conspired and acted jointly to deprive Plaintiff of his partnership ownership and rights.

Mary filed separate answers in her individual capacity and in her capacity as executor. The latter answer included special exceptions and a counterclaim against James for breach of contract. The counterclaim alleged that James agreed to sell his partnership interest to Brian in 2019, and that Brian "tendered payment [to James] in full satisfaction of the contract." Attached to Mary's counterclaim was a copy of a "Bill of Sale," signed by both parties, indicating that James transferred "[a]ll of [his] undivided interest in all cattle, equipment, inventory, cash on-hand, as well as any and all other tangible assets and/or interests owned and claimed by [DB]" to Brian in exchange for consideration of $94,133. A copy of a cashier's check for that exact amount, made out

[1] James's claims against Mary individually were also brought against Mary in her capacity as sole owner and as proprietor of "Mary Doss Cattle Co."

3

from Brian to James and dated October 30, 2019, was also attached to Mary's counterclaim. Mary alleged that James breached the "Bill of Sale" "when, by filing claims against the consideration he conveyed without reservations or exceptions, he repudiated the representations and warranties he made under the contract."

On May 10, 2021, Mary filed a Rule 91a motion to dismiss all of James's claims against her in her individual capacity. James filed a response. On July 7, 2021, the trial court signed an order granting the Rule 91a motion and dismissing the claims without prejudice. The order did not award attorney's fees to Mary.[2]

On January 27, 2022, James filed a fourth amended petition raising the same claims and making the same factual allegations as his third amended petition. The next day, Mary in her capacity as executor filed an amended answer, amended special exceptions, and amended counterclaims. Her amended pleading added an allegation that James breached his fiduciary duty to Brian by: (1) "us[ing] four bulls owned individually by [Brian] to service cattle he owned individually as well as those owned by [DB] without compensation to [Brian]"; (2) "s[elling] calves produced by such services of [Brian's] bulls without compensation to Brian"; and (3) "fail[ing] to compensate [Brian] for his labor working cattle he owned individually as well as those owned by [DB]." Mary sought actual and exemplary damages on behalf of Brian's estate.

On February 22, 2022, Mary filed a motion for no-evidence summary judgment in her capacity as executor of Brian's estate. The motion argued that there was no evidence that Brian breached a duty of loyalty to James, that he converted any DB property, or that

---

[2] In her capacity as executor, Mary also filed a plea to the jurisdiction on July 21, 2021, seeking dismissal of James's claims against the estate. The trial court denied the plea on August 18, 2021. The plea to the jurisdiction is not at issue in this appeal.

4

he committed fraud or misrepresentation; it also argued that there was no evidence to support any elements of the other torts alleged in James's suit. James filed a response to the motion along with evidence, including his unsworn declaration, excerpts from his deposition, an errata sheet purportedly correcting his deposition testimony, and cattle sales records. On March 8, 2022, the trial court signed an order granting Mary's motion for no-evidence summary judgment and dismissing James's claims against the estate with prejudice.[3]

On July 12, 2022, Mary filed a motion for traditional summary judgment alleging that her breach of contract counterclaim against James was conclusively established. Specifically, the motion argued that the "clear and unambiguous language of the [Bill of Sale] provides that [James] is contractually obligated to warrant and defend [Mary] in the James Doss lawsuit." The motion included several pieces of evidence, including the "Bill of Sale" and cashier's check which had been included with her original counterclaim. James filed a response and Mary filed a reply to his response.

James filed a motion for summary judgment as to Mary's counterclaims on July 28, 2022. The motion alleged: (1) there was no evidence to support any of the elements of breach of contract; (2) there was no evidence to support any of the elements of breach of fiduciary duty; and (3) the "Bill of Sale" establishes that James did not breach a duty to Brian and that Brian did not suffer any damages. Mary filed a response to James's motion containing evidence.

---

[3] In the March 8, 2022 order, the trial court also sustained Mary's objections to some of the evidence James attached to his summary judgment response. Specifically, the court sustained objections to paragraphs 2–16 in Exhibit A (all of the substantive paragraphs in James's unsworn declaration) and to the entirety of Exhibit C (the cattle sales records).

On August 19, 2022, the trial court signed an order granting Mary's motion for traditional summary judgment and finding that Mary "is entitled to defense by [James] for the James Doss lawsuit."

On September 6, 2022, the trial court signed an order granting James's motion for summary judgment as to Mary's claim for breach of fiduciary duty and exemplary damages, but denying the motion as to Mary's claim for breach of contract. With all issues of liability having been resolved, the court held a trial solely on the matter of attorney's fees on September 21, 2022.

The trial court signed a final judgment on September 28, 2022, which incorporated the rulings previously made in the case on July 7, 2021 (granting Mary's Rule 91a motion), March 8, 2022 (granting Mary's motion for no-evidence summary judgment), August 19, 2022 (granting Mary's motion for traditional summary judgment on her breach of contract counterclaim), and September 6, 2022 (granting in part and denying in part James's motion for summary judgment on Mary's counterclaims). The final judgment awarded Mary, as executor of Brian's estate, $170,465.27 in trial attorney's fees, expenses, and costs; an additional $15,000 in attorney's fees if she "prevails in an appeal of this judgment to an intermediate court of appeals"; and an additional $15,000 in attorney's fees in the event she "prevails in an appeal of this judgment to the Texas Supreme Court." This appeal followed.

## II.    DISCUSSION

### A.    Rule 91a Motion to Dismiss

By his first issue, James argues the trial court erred by granting Mary's Rule 91a motion to dismiss the claims he made against her in her individual capacity.

6

Except in a family code or inmate litigation case, a party may move under Rule 91a to dismiss a civil cause of action "on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought" or "no reasonable person could believe the facts pleaded." *Id.* Whether the dismissal standard is satisfied depends "solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX. R. CIV. P. 91a.6. We review the trial court's ruling on a Rule 91a motion de novo. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016). "[W]hile Rule 91a requires courts to take all factual allegations in the pleadings as true, legal conclusions need not be taken as true." *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 605 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.).

James asserted that Mary individually breached a duty of loyalty to DB, converted or embezzled DB's property, and committed fraud by misrepresentation.[4] We address each cause of action in turn.[5]

---

[4] James's third amended petition also asserted a breach of contract claim against Mary individually, and the trial court's July 7, 2021 order specifically dismissed that claim. James does not challenge that ruling on appeal.

[5] We note that, in its order granting Mary's Rule 91a motion, the trial court dismissed James's claims "without prejudice," thereby allowing James to refile—and James later filed a fourth amended petition making exactly the same claims. The record does not indicate that Mary filed any motion seeking to dismiss the claims made against her individually in the fourth amended petition. However, the final judgment specified that it "finally disposes of all claims of all parties and is appealable." Thus, the judgment is final for purposes of appeal. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties."). Moreover, James's third and fourth amended petitions appear to contain identical factual allegations and claims. Accordingly, in the interest of judicial economy, we construe the order granting the Rule 91a motion as applying to the claims made in James's fourth amended petition.

**1.      Breach of Duty of Loyalty**

To establish a breach of the duty of loyalty, a plaintiff must show (1) there is a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached that duty, and (3) the breach resulted in an injury to the plaintiff or benefit to the defendant. *Zhu v. Lam*, 426 S.W.3d 333, 339 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (listing elements of breach of fiduciary duty). A fiduciary relationship may arise: (1) formally as a matter of law, such as between partners or an attorney and a client; or (2) informally, as a "confidential relationship" or "from a moral, social, domestic, or merely personal relationship where one person trusts in and relies upon another." *Gray v. Sangrey*, 428 S.W.3d 311, 316 (Tex. App.—Texarkana 2014, pet. denied).

In his third and fourth amended petitions, James alleged the facts set forth above, and he summarized his breach of duty of loyalty claim as follows:

> Defendants have breached the duties owed Plaintiffs by abusing their authority over the partnership with the intent to harm the interests of Plaintiffs, a partner, in a manner that does not comport with the honest exercise of Defendants' business judgment, and by doing so created a serious risk of harm to [DB] and Plaintiffs' interest in [DB].
>
> . . . .
>
> Defendants' actions constituting breach of fiduciary duties and visible departure from the standards of fair dealing and a violation of fair play on which Plaintiffs are entitled to rely included:
>
> 1.      Malicious suppression of equal payment of income/distributions
>
> 2.      Breaching fiduciary duties
>
> 3.      Paying personal expenses from partnership funds
>
> 4.      Diverting partnership opportunities
>
> 5.      Making excessive and unequal payment of income/distributions to

8

Defendants

6.      Attempts to deprive as a partner of the value of his shares [sic]

7.      Inadequate payment of income/distributions

8.      Conspiring to deprive a partner of his ownership rights and equity.

Defendants did not play fair. Defendants made business decisions about how to run the partnership with the goal and result of breaching the fiduciary duties owed Plaintiffs out of profits and assets to which Plaintiffs were entitled and should have been paid.

James argues on appeal that his pleadings are sufficient to show a cognizable cause of action against Mary individually, and to give her fair notice of that claim.

In her Rule 91a motion, Mary argued that the claim has no basis in law or fact because she "had no fiduciary duty and owed no legal duties" to James. On appeal, she notes that the statute governing partnership formation states that "co-ownership of property"—as in the case of "community property"—"does not indicate that a person is a partner in the business." TEX. BUS. ORGS. CODE ANN. § 152.052(b)(2). We agree. As noted, James's pleading states that, after Bill's death in 2014, James and Brian each owned a "3/6" interest in the partnership. James's allegations against Mary individually are identical to his claims against her in her capacity as executor of Brian's estate; he did not allege that Mary had any individual interest in DB or partnership assets so as to give rise to a formal fiduciary relationship. *See Gray*, 428 S.W.3d at 316. Moreover, he did not allege any facts which would support a finding that Mary individually had a confidential relationship with DB so as to establish an informal fiduciary relationship. *See id.* And, he alleged no facts which would support a finding that Brian "was engaged in a joint enterprise" with Mary such that she would be individually responsible for torts Brian may have committed.

9

Because there are no pleadings which would support the existence of a fiduciary duty owed from Mary individually, James's breach of the duty of loyalty claim against Mary in her individual capacity has no basis in law or fact. *See* Tex. R. Civ. P. 91a; *Zhu*, 426 S.W.3d at 339. The trial court did not err in dismissing this claim under Rule 91a, and this part of James's first issue is overruled.

### 2. Conversion/Embezzlement

To establish a claim for conversion, a plaintiff must show: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied). Demand and refusal are not required if other evidence establishes the act of conversion, *Burns v. Rochon*, 190 S.W.3d 263, 270 n.2 (Tex. App.—Houston [1st Dist.] 2006, no pet.), if the demand would have been useless, *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex. App.—Corpus Christi 1979, no writ), or if the defendant's acts amount to a clear repudiation of the owner's rights. *Loomis v. Sharp*, 519 S.W.2d 955, 958 (Tex. App.—Texarkana 1975, writ dism'd).

Mary's Rule 91a motion argued in part that James's pleadings are conclusory. She cites *Vasquez v. Legend Natural Gas III, LP*, for the proposition that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of Rule 91a. 492 S.W.3d 448, 451 (Tex. App.—San Antonio 2016,

10

pet. denied) (citing *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied)). However, *Vasquez* relied on authority which applied the federal pleading standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), in its Rule 91a analysis. *See GoDaddy.com, LLC*, 429 S.W.3d at 754 (stating that "Rule 91a is analogous to [federal] Rule 12(b)(6); therefore, we find case law interpreting Rule 12(b)(6) instructive," and citing *Iqbal* and *Twombly*). In 2017, we held that the *Iqbal/Twombly* standard does not apply to Rule 91a motions to dismiss. *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 610 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (reasoning that "[c]ertain fundamental features of Texas law make it impracticable to incorporate *Iqbal*'s standard into this state's pleading requirements"). Instead, we held that "Texas standards better resemble the federal standard which preceded *Twombly* and *Iqbal*: the rule of *Conley v. Gibson*," 355 U.S. 41 (1957), under which dismissal of a pleading for failure to state a claim was not authorized "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reaves*, 518 S.W.2d at 611 (quoting *Conley*, 355 U.S. at 47, and noting that "the federal criterion of fair notice" espoused in *Conley* "resembled the pleading standard which is incorporated in" Texas Rule of Civil Procedure 45(b)); *see* Tex. R. Civ. P. 45(b) ("That an allegation be evidentiary or be of legal conclusion shall not be grounds for an objection when fair notice to the opponent is given by the allegations as a whole."); *see also* Tex. R. Civ. P. 47(a) (stating that an original pleading which sets forth a claim for relief shall contain "a short statement of the cause of action sufficient to give fair notice of the claim involved").[6]

---

[6] We note further that, when special exceptions are not filed, we are to construe the pleadings

11

Even assuming that Rule 91a theoretically authorizes dismissal on the basis of conclusory pleadings, we do not find that James's conversion allegations fit that description. Mary claims that James's conversion claim consisted of "one sentence": "Defendants took cattle belonging to Plaintiffs for Defendants' own personal gain and benefit." However, James's third amended petition also alleged that, after Mary "started her own cattle company" around 2015, she "began directly diverting and selling partnership assets." These fact allegations, taken as true and construed liberally, would establish his entitlement to relief on the conversion claim, without regard to Mary's status as a partner of DB or the existence of any fiduciary relationship between Mary and Brian or the partnership. *See Cypress Creek EMS*, 548 S.W.3d at 684. The allegations are extremely brief but specific, and they are sufficient to give Mary fair notice of the claim.

In her Rule 91a motion, Mary also argued that James "cannot maintain a cause of action for conversion or embe[zzle]ment" because he "sold all his interest in partnership assets" in 2019. She notes on appeal that, according to the Texas Supreme Court, "Rule 91a permits motions to dismiss based on affirmative defenses 'if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020) (noting that "Rule 91a limits a court's factual inquiry to the plaintiff's pleadings but does not so limit the court's legal inquiry," and that "a court may consider the defendant's pleadings if doing so is necessary to make the legal

---

liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). Here, though Mary's answer in her capacity as executor contained special exceptions challenging the sufficiency of James's pleadings, her answer in her individual capacity did not contain special exceptions. Accordingly, we liberally construe James's pleadings against Mary individually. *See id.*

determination of whether an affirmative defense is properly before the court"). However, affirmative defenses must be pleaded, TEX. R. CIV. P. 94, and Mary did not plead this or any other specific affirmative defense in her individual answer.[7] Accordingly, the trial court erred if it granted the Rule 91a motion based on Mary's affirmative defense that James "sold all his interest in partnership assets" in 2019.

We conclude the trial court erred by granting the Rule 91a motion to dismiss as to the conversion claim against Mary in her individual capacity. We sustain this part of James's first issue.

### 3.    Fraud by Misrepresentation

To establish a claim for fraud by misrepresentation, a plaintiff must show: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other

---

[7] In a section entitled "Affirmative and Other Defenses," Mary's individual answer stated in its entirety:

3.      Subject to and without waiver of her general denial, Mary Doss, individually, pleads the following additional defenses to James Doss' claims, some of which may be affirmative defenses on which Mary Doss will have the burden of proof and others of which relate to the elements of James Doss' claims. By pleading these affirmative defenses, Mary Doss, individually does not assume the burden of proof for any defense for which Mary Doss, individually would not otherwise have the burden of proof under Texas law. Mary Doss, individually sets forth its [sic] affirmative and additional defenses, as follows:

4.      Some or all of the allegations in James Doss' live Petition fail to state a claim upon which relief may be granted.

5.      Mary Doss, individually, and James Doss have no special relationship.

6.      Mary Doss, individually, owes no duty to James Doss in any capacity.

7.      The claims for relief contained within James Doss' live Petition fail to state facts sufficient to constitute a basis for an award of attorney fees and/or expenses.

In comparison, Mary's answer filed in her capacity as executor specifically alleged the affirmative defenses of estoppel, release, and waiver.

party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). With respect to his fraud claim against Mary individually, James alleged the facts as set forth above, and he summarized his claim as follows:

> Defendants owed Plaintiffs a duty of loyalty and as a fiduciary as a partner to protect their interests. Defendants have breached that duty, misrepresented that Defendants had used [DB] money on behalf of Plaintiffs and/or [DB] when in fact Defendants had not. Defendants fraudulently concealed their actions, misrepresentations when Defendants, including by omission, and their information to the detriment of Plaintiffs [sic]. Plaintiffs seek the full damage recoverable under Texas law for these actions by Defendants.

Again, James argues that his pleadings are enough to satisfy Rule 91a and to provide Mary with fair notice of his claim. On appeal, as with the breach of duty of loyalty claim, Mary argues that "because [she] owed no legal duty to James, his claim of fraud and misrepresentation have no basis in law." And again, we agree. Although a legal duty to the defendant is not one of the traditional elements of a fraud-by-misrepresentation claim, it is a required showing when the claimed misrepresentation is alleged to have been accomplished by non-disclosure. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. . . . Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent."). Just as James failed to allege facts showing Mary individually owed a fiduciary duty, he also failed to allege any facts which would support a finding that Mary, individually, had a duty to disclose information about the partnership to him. Accordingly, his fraud claim has no basis in fact or law, and the trial court did not err in dismissing the claim under Rule 91a. *See id.* This part of James's first

14

issue is overruled.

**B.      Motions for Summary Judgment**

**1.      Applicable Law and Standard of Review**

A summary judgment motion may be brought on traditional or no-evidence grounds. *See* TEX. R. CIV. P. 166a. A movant for traditional summary judgment has the burden to establish that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). A movant for no-evidence summary judgment must show that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the other party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i).

If, in response to a summary judgment motion, the non-movant produces more than a scintilla of evidence to raise a fact issue on the challenged elements, then summary judgment is improper. *Amedisys, Inc.*, 437 S.W.3d at 511; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010).

We review summary judgments de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). The evidence is viewed in the light most favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts

against the motion. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam); *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). "Issues not expressly presented to the trial court by written motion, answer[,] or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

### 2. James's Claims Against Brian's Estate

By his second issue, James challenges the trial court's order granting Mary's motion for no-evidence summary judgment on his claims against the estate.

James attached three pieces of evidence to his response to Mary's no-evidence motion: (1) his unsworn declaration, (2) excerpts from his deposition, and (3) business records relating to the sale of cattle. As noted, the trial court granted Mary's objections to the entire substantive section of James's declaration, and to the cattle sales records, in its March 8, 2022 order. As part of his second issue, James argues the trial court erred by excluding this evidence pursuant to Mary's motion. However, James does not explain whether or how the evidentiary rulings "probably caused the rendition of an improper judgment" or "probably prevented [him] from properly presenting the case to the court of appeals." *See* TEX. R. APP. P. 38.1(i), 44.1(a); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted."). Accordingly, we do not address this part of James's second issue, and we do not consider the excluded evidence in our summary judgment analysis.

The only pieces of evidence admitted by the trial court and considered for summary judgment purposes were James's deposition excerpts. In those excerpts, James agreed that the only evidence that Brian embezzled cattle from the partnership was James's own

16

testimony and the cattle sales records. He agreed that, under the "Bill of Sale," Brian was required to pay him $94,133, and that Brian complied with that duty. He agreed that no one physically forced him to sign the "Bill of Sale." When asked what Brian did to fraudulently induce him into signing the "Bill of Sale," James replied, "He didn't." However, James later sought to make "changes/correction[s]" to his deposition testimony in an errata sheet which was attached to the deposition excerpts. In relevant part, the errata sheet indicated that James's response of "He didn't" should be changed to: "That the Bill of Sale was only for cattle that were counted October 28, 2019."[8]

> The Texas Rules of Civil Procedure provide that a deposition witness
>
> may change responses as reflected in the deposition transcript by indicating the desired changes, in writing, on a separate sheet of paper, together with a statement of the reasons for making the changes. No erasures or obliterations of any kind may be made to the original deposition transcript. The witness must then sign the transcript under oath and return it to the deposition officer. If the witness does not return the transcript to the deposition officer within 20 days of the date the transcript was provided to the witness or the witness's attorney, the witness may be deemed to have waived the right to make the changes.

TEX. R. CIV. P. 203.1(b). In her summary judgment reply, Mary argued that the errata sheet was "not provided until February 28, 2022," which is more than seven months after the deposition was taken. The record does not clearly reflect when James or his attorney were provided with the deposition transcript, *see id*.; however; James concedes that "the corrections were not returned to the proper court reporter within Rule 203.1's time frame." *See id.* Under these circumstances, James is deemed to have waived the right to make any changes to his deposition testimony. *See id.*

---

[8] As detailed further *infra*, James alleged in his unsworn declaration that "someone changed the wording" on the "Bill of Sale" to reflect that the "Transferred Property" was "all cattle" rather than "counted cattle."

James failed to produce competent evidence establishing any of his claims against Brian's estate. Accordingly, the trial court did not err in granting Mary's motion for no-evidence summary judgment. We overrule James's second issue.

### 4. Mary's Breach of Contract Counterclaim

By his third issue, James challenges the trial court's order granting Mary's motion for traditional summary judgment on her breach of contract counterclaim brought in her capacity as executor of Brian's estate. A plaintiff asserting a breach of contract claim must prove: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance as the contract required; (3) that the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) that the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018).

As noted, the "Bill of Sale" stated that James was selling "[a]ll of [his] undivided interest in all cattle, equipment, inventory, cash on-hand, as well as any and all other tangible assets and/or interests owned and claimed by [DB]" to Brian for $94,133. The "Bill of Sale" also stated in relevant part:

> Seller [James], for the Consideration and subject to the Reservations from Transfer and the Exceptions to Transfer and Warranty, sells, transfers and delivers the Transferred Property to Buyer [Brian], together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Buyer and Buyer's heirs, successors and assigns forever. *Seller binds Seller and Seller's heirs and successors to warrant and·forever defend all and singular the Transferred Properties to Buyer and Buyer's heirs, successors and assigns* against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through or under Seller but not otherwise, except as to the Reservations from Transfer and the Exceptions to Transfer and Warranty.[9]

---

[9] Elsewhere, the "Bill of Sale" stated: "Reservations From Conveyance and Warranty: NONE" and

18

(Emphasis added.) Mary's breach of contract counterclaim alleged that James materially breached the "Bill of Sale" "when, by filing claims against the consideration he conveyed without reservations or exceptions, he repudiated the representations and warranties he made under the contract." Mary noted that Brian fully complied with his obligation to pay James $94,133 for his share of the partnership. She argued that James's breach caused damages in that it "deprived [her] of the essential benefits which [Brian's] contract sought to guarantee, namely, peace of mind that he and his heirs would be free from the worry of litigation surrounding the former partnership."

Mary attached evidence to her traditional summary judgment motion, including the "Bill of Sale," a cashier's check made out from Brian to James for the sales price, and additional excerpts from James's deposition. As in his unsworn declaration, James claimed in his deposition that the "Bill of Sale" "[o]riginally" stated that the property being transferred was "[a]ll of [his] undivided interest in counted cattle," but when he re-read the contract the following day, he "noticed that 'counted' was eliminated and 'all' was inserted" in its place. James therefore claimed that the $94,133 he received was "for [his] share of the *counted* cattle" (emphasis added), not for his entire share of the partnership. However, James agreed in his deposition that he signed the "Bill of Sale," he agreed that there is no other version of the "document that exists," and he denied that anyone fraudulently induced him into signing it. Moreover, even though he ostensibly recognized there was a "mistake" in the "Bill of Sale" the day after signing it, James agreed that he did not attempt to give back the money, and no one attempted to rescind or "undo" the contract.

In response to Mary's traditional summary judgment motion, James argued only

---

"Exceptions to Conveyance and Warranty: NONE."

19

that there is an issue of material fact concerning whether an enforceable contract existed.[10] He attached evidence to his response, including his unsworn declaration which had previously been excluded with respect to Mary's no-evidence motion, and a second unsworn declaration. In his first declaration, James stated in part as follows:

10.    In late October 2019, people herded together the partnership cattle to be counted. The partnership cattle head count was ninety-six (96) cows. The proper partnership cattle head count should have been approximately one hundred seventy (170), not ninety-six.

. . . .

11.    There was a Bill of Sale drafted to cover the sale to Brian of my one-half partnership interest. As to that Bill of Sale, I did sign it on October 30, 2019. However, someone changed the wording between the time I approved the wording and when I returned the signature page. Specifically, the version of the Bill of Sale that had my approval originally stated that the Bill of [S]ale was as to "All of Seller's undivided interest in *counted* cattle, equipment, inventory, cash on-hand, as well as any and all other tangible assets owned or claimed by [DB]." However, someone changed that sentence to "All of Seller's undivided interest in *all* cattle, equipment, inventory, cash on-hand, as well as any and all other tangible assets or interest owned and claimed by [DB]." Someone edited the document to drop the word "counted." I did not notice the change until I returned home. That change affected my one-half interest in the approximate seventy (70) missing cows. I did not receive the proceeds for the value of the approximate seventy missing cows. I received $94,133.00 as my one-half partnership interest as to this sale. That amount is less than the value of my one-half partnership interest when you consider the

_____

[10] As noted, the "Bill of Sale" states:

Seller binds Seller and Seller's heirs and successors to warrant and forever defend all and singular the Transferred Properties to Buyer and Buyer's heirs, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through or under Seller but not otherwise . . . .

This language is opaque at best. In her traditional summary judgment motion, Mary asserted without reference to authority that, pursuant to this language, because James's suit "is a cause of action against the Transferred Property, James owes [her] a defense related to" his suit. In any event, James did not dispute (either in his summary judgment response or on appeal) that, if the "Bill of Sale" is enforceable as a contract, then it requires him to compensate Mary for the attorney's fees and costs she incurred in defending against his suit.

approximate seventy missing cows.

(Emphasis added.) In his second declaration, James stated:

3.    I signed the Bill of Sale at [attorney] William "Bill" Pende[r]graft's office on October 30, 2019. He drafted the Bill of Sale. On that day Brian Doss and I were to meet at Bill Pendergraft's office at 10:00 AM. I was there at that time. Brian Doss did not arrive until approximately 11:00 AM. Bill Pendergraft had an urgent noon medical appointment requiring him to leave his office to arrive there at noon.

4.    Bill Pendergraft handed me the two-page document. All of the contractual details were on Page 1, and the signatures and notarizations were the only items on Page 2. I reviewed Page 1, and it stated, "All of Seller's undivided interest in counted cattle, equipment, inventory, cash on-hand, as well as any and all other tangible assets or interests owned and claimed by [DB]." I stepped out of that room to find Bill Pendergraft's secretary so that I can sign Page 2 before a notary. I left Page 1 on the table in the room.

5.    I went to another room and signed Page 2 in front of the notary. She gave me a copy of my signed and notarized Page 2. I took that copy, stepped back into the original room, grabbed the Page 1 laying on the table, [put] both pages in a folder, and left the office.

6.    It was the next day that I looked at the two pages. The Page 1 I left the office with was different than the Page 1 Bill Pendergraft presented me the day before. A sentence had been changed from the version Bill Pendergraft gave me before I stepped out to sign it. On the original Page 1, the sentence read, "All of Seller's undivided interest in counted cattle, equipment, inventory, cash onhand, as well as any and all other tangible assets or interests owned and claimed by [DB]." The phrase, "counted cattle," had been changed to "all cattle."

7.    I do not know who made the change to Page 1 while I was out of the room. I would say that I was out of the room for no more than ten minutes. Neither Bill Pendergraft nor Brian Doss pointed out the change to Page 1. The Page 1 in Executor's motion for summary judgment exhibit is not the same as Page 1 to which I added my signature. I never agreed to anything other than the sale amount applying to only counted cattle.

21

Mary filed a reply to James's response in which she objected to his declarations[11] and further argued that, even if the declarations are considered in the summary judgment analysis, they do not establish a disputed issue of material fact with respect to her counterclaim. She argued that the statements therein are conclusory and contradict James's deposition testimony.

We agree. In the context of summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). Moreover, a summary judgment "may be based on uncontroverted testimonial evidence of an interested witness" only "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). "'[C]ould have been readily controverted' does not simply mean that the movant's summary judgment proof could have been easily and conveniently rebutted. Rather, it means that testimony at issue is of a nature which can be effectively countered by opposing evidence." *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). Here, the statements made in James's declaration regarding the alleged replacement of a word in the "Bill of Sale" after he signed it cannot be effectively countered by opposing evidence. According to James's deposition testimony, there is no documentary evidence to support his claim that the "Bill of Sale" was altered, and no other witness would be able to provide testimony to support his claim.

Further, under the "sham affidavit rule," a "nonmovant cannot defeat a motion for

---

[11] The record does not indicate that the trial court ruled on these objections.

summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018). The sham affidavit rule "may be applied when (1) the affidavit is executed after a deposition and (2) there is a clear contradiction on (3) a material point (4) without explanation." *County of El Paso v. Aguilar*, 600 S.W.3d 62, 75 (Tex. App.—El Paso 2020, no pet.). In his declarations, James suggests that the "Bill of Sale" did not constitute an enforceable contract because there was no meeting of the minds as to the property being transferred. This contradicts his deposition testimony, in which he agreed that Brian was obligated under the "Bill of Sale" to pay him $94,133. As Mary notes, James did not assert that the "Bill of Sale" had been fraudulently altered or was unenforceable until after the deaths of Brian and the drafting attorney, Pendergraft.

Finally, even if the "Bill of Sale" was not enforceable at the time it was executed, it arguably became enforceable when James accepted and kept the $94,133 payment from Brian even after he realized the alleged altered language. *See BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021) ("Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate."); *Mission Petrol. Carriers, Inc. v. Kelley*, 449 S.W.3d 550, 553–54 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("An act inconsistent with the intent to avoid a contract ratifies the contract. Once a party ratifies a contract, he may not later withdraw his ratification and seek to avoid the contract. . . . A party cannot avoid an agreement by claiming there was no intent to ratify after he has accepted the benefits of the agreement."). We note that James has never pleaded a cause of action alleging that Brian, Mary, or anyone else fraudulently altered

23

the "Bill of Sale" after he signed it. And "[a]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).

For the foregoing reasons, we conclude James's unsworn declarations failed to generate a fact issue as to Mary's breach of contract counterclaim. Therefore, the trial court did not err in granting Mary's traditional summary judgment motion. *See* TEX. R. CIV. P. 166a(c). We overrule James's third issue.

### 5. Mary's Breach of Fiduciary Duty Counterclaim

By two cross-issues, Mary argues the trial court erred by granting James's motion for summary judgment as to (1) her counterclaim for breach of fiduciary duty and (2) her corresponding request for exemplary damages. The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *Parker*, 514 S.W.3d at 220. Mary contends on appeal that James failed to conclusively negate at least one element of her claim.

In his summary judgment motion, James alleged that (1) "there is no evidence to support any of the elements" of breach of fiduciary duty, and (2) "[t]he evidence would establish that the cattle counting exercise as part of the 2019 Bill of Sale would have resolved all such issues of James Doss somehow benefitting from Brian Doss['s] bulls during 2014–2019." Mary filed a response which included her affidavit, in which she stated in relevant part:

> Brian supported our family, our two sons and me, driving an 18-wheeler for Austin Turf Grass. . . . Brian worked hard and was valued by his boss Greg Daniel, the owner of Austin Turf Grass.
>
> September 10, 2013, Mr. Daniel purchased four bulls from Mike Griffith and told Mr. Griffith that these bulls were to be delivered to his employee Brian Doss. Brian received these bulls from Greg Daniel in addition to his regular

paycheck.

A few months later in early 2014, Brian's health had declined and he ended his employment of nearly thirty years with Greg Daniel. In May of 2014, Brian and his uncle James Doss formed a partnership and began operating their business together as [DB].

James never helped Brian with the work needed for the DB cattle. Brian never received any compensation for his time and labor spent working the DB cattle. Brian also took care of James'[s] four cows without being compensated.

Brian kept his #1 bull (we called Mr. Griffith) with his girls on the front part of 987 acres he owned on Hwy. 60 ("987 Property"). Brian kept his #10 bull with the other girls in the back of the same property. DB cows were kept on the 987 Property. All calves produced on the 987 Property were from Brian's two bulls.

Brian kept his #7 bull and his #16 bull on the 666 acres he owned on Hwy. 521 ("521 Property"). DB cows were kept on the 521 Property. All calves produced on the 521 Property were from Brian's two bulls.

Mary's response also included Brian and Mary's federal tax returns and cattle sales records. She argued that James "did not disprove [her] breach of fiduciary duty cause of action as a matter of law." Mary further alleged, without referring to any particular statement in her affidavit or to any other evidence in the record, that she "produced more than a scintilla of evidence to defeat a no-evidence motion for summary judgment."

On appeal, without reference to the record or authority, Mary argues as follows:

In this case, James had a duty to inform Brian of the value of his bulls' services to himself and to DB. Moreover, James had a duty to recognize that in lieu of compensation, James should have, at a minimum, recognized a greater ownership of Brian in the c[al]ves produced by his bulls. In addition, James had a duty to compensate Brian for his time and labor provided to DB. Again, if not directly in cash wages, at a minimum, James had a duty to compensate Brian at the time the calves were sold at market. Instead, James took advantage of his nephew and used his position as the elder family member to convince Brian that he was not owed anything for the use of his bulls, his time, or his labor.

As was the case with her trial court response, Mary does not point to any particular

25

evidence in the summary judgment record supporting these allegations in her brief on appeal. In particular, she does not explain how any of the statements in her affidavit support any of the elements of a breach of fiduciary duty claim against Brian. *See* TEX. R. APP. P. 38.1(i).

We conclude the trial court did not err in granting no-evidence summary judgment on this claim.[12] *See* TEX. R. CIV. P. 166a(i). Mary's first cross-issue is overruled. Her claim for exemplary damages was entirely dependent on her breach of fiduciary duty claim. *See Home Comfortable Supplies, Inc. v. Cooper*, 544 S.W.3d 899, 907 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Punitive damages . . . are available for breach of fiduciary duty."); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.) ("[E]xemplary damages are not recoverable for a breach of contract, even one breached maliciously, as a matter of law."). Accordingly, we further conclude that the trial court did not err in dismissing that claim, and we overrule Mary's second cross-issue as well.

## C.    Attorney's Fees, Expenses, and Costs

By his fourth issue, James argues the trial court erred in awarding Mary attorney's fees, costs, and expenses in the final judgment. However, this issue is entirely contingent on the success of James's argument that the court erred in granting Mary's traditional motion for summary judgment on her breach of contract counterclaim. We have already rejected his argument in that regard. Accordingly, we overrule James's fourth issue.[13]

---

[12] In light of our conclusion, we need not address the traditional grounds for summary judgment raised in James's motion. *See* TEX. R. APP. P. 47.1.

[13] We note that the attorney's fees award, including the conditional award of appellate fees, was made to Mary in her representative capacity as executor of Brian's estate. The only part of James's appeal

### III.    CONCLUSION

We reverse that portion of the trial court's judgment dismissing James's conversion claim against Mary individually under Rule 91a, and we remand that claim to the trial court for further proceedings consistent with this memorandum opinion. The remainder of the judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
27th day of June, 2024.

---

that was successful, however, relates to a claim he made against Mary in her individual capacity. Accordingly, for purposes of the conditional attorney's fees award, Mary "prevailed" in this appeal.